GUSTAV KOEHLER *et al.*, Plaintiffs-Appellants, v. SCANDINAVIAN AIRLINES SYSTEMS, Defendant-Appellee.

First District (2nd Division)   No. 1—95—4330

Opinion filed November 27, 1996.

Menges, Mikus & Molzahn, of Chicago (Mark F. Devan and Scott G. Reno, of counsel), for appellants.

McDermott, Will & Emery, of Chicago (Jeffrey C. Clark, of counsel), and Condon & Forsyth, of New York, New York (Michael J. Holland, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiffs Gustav Koehler, Ida Koehler, and Reimund Koehler (the Koehlers) appeal from an order of the circuit court granting de-

fendant Scandinavian Airlines Systems (SAS) summary judgment pursuant to section 2—1005(b) of the Illinois Code of Civil Procedure (735 ILCS 5/2—1005(b) (West 1992)). On appeal, the Koehlers contend that the trial court erred in granting SAS summary judgment based on its determination that it lacked subject matter jurisdiction pursuant to the Warsaw Convention (Convention)[1] and, "assuming *arguendo*" that they were engaged in "international transportation" as defined by the Convention, their common law state causes of action were not preempted by the Convention. For the reasons set forth below, we reverse.

SAS is a consortium formed by Aero-transport AB, Sweden (ABA), Det Danske Luftfartselskab, A/S, Denmark (DDL), and Det Norske Luftfartselskab A/S, Norway (DNL). The consortium owns SAS according to the following division: ABA, three-sevenths, DDL, two-sevenths; and DNL, two-sevenths. ABA is incorporated and has its principal place of business in Sweden, DDL is incorporated and has its principal place of business in Denmark, and DNL is incorporated and has its principal place of business in Norway. SAS admits that it does business in Illinois.

On or about January 15, 1994, the Koehlers bought tickets to travel from Germany to Chicago and back to Germany. They purchased their tickets in Augsburg, Germany, through a travel agent, Asta Reisen, who ticketed them to fly on defendant SAS. According to the Koehlers, they obtained SAS's consent to have their dog "Terry" accompany them in the cabin of the plane in lieu of one piece of carry-on luggage.

On the return trip from Chicago to Germany, the Koehlers stopped in Copenhagen, Denmark, to make a connecting flight. They had traveled from Germany to Chicago and Chicago to Copenhagen transporting Terry in the cabin of the plane. After arriving in Copenhagen, the Koehlers went to check in for their flight to Germany. They walked for 10 or 15 minutes to a SAS ticket counter, which was located in a common area of the terminal. Upon checking in, they were told that they would have to pay extra to take the dog with them on their flight to Germany. When they refused to pay the additional amount, SAS directed the Danish police to arrest them, and they were denied access to telephones and the airport. (The record does not indicate how long or where they were detained.) The

[1]Convention for the Unification of Certain Rules Relating the International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) (reprinted in note following 49 U.S.C.A. § 1502 (West 1988)).

Koehlers subsequently left the airport, rented a car and returned to Germany.

On June 19, 1995, the Koehlers filed a complaint against SAS alleging false arrest and imprisonment, defamation, intentional infliction of emotional distress, and breach of contract. In its answer, SAS asserted eight affirmative defenses: (1) failure to state a cause of action upon which relief could be granted; (2) lack of subject matter jurisdiction pursuant to article 28 of the Convention; (3) contributory negligence of the Koehlers pursuant to article 21 of the Convention; (4) lack of liability or limitation of liability "pursuant to its [SAS's] Tariffs on file with the Department of Transportation of the United States and pursuant to its Conditions of Carriage as set forth in the relevant contract of transportation"; (5) lack of proximate cause or culpable conduct on the part of SAS; (6) complete performance of all the terms and conditions of the contract between the Koehlers and SAS; (7) dismissal pursuant to the act-of-state doctrine; and (8) dismissal pursuant to the doctrine of *forum non conveniens.*

On July 31, 1995, SAS filed a motion for summary judgment based on lack of subject matter jurisdiction pursuant to articles 1(2) and 28 of the Convention. Article 1(2) defines "international transportation" as follows:

> "For the purposes of this convention the expression *'international transportation'* shall mean any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention." (Emphasis added.)
> 49 U.S.C.A. § 1502, Historical Note, at 430 (West 1988).

According to SAS, because the Koehlers were involved in "international transportation," as defined in article 1, the "Warsaw Convention applied to plaintiffs' claims and the court lacked subject matter jurisdiction over the action because plaintiffs had failed to bring the action in a proper forum under Article 28 of the Convention," which "restricts the forums in which damages actions may be brought" to four possible fora: the carrier's domicile; the carrier's principal place of business; where the contract was formed; or the place of final destination. SAS further maintained that none of these enumerated fora were located in the United States based on the following: (1) the domicile of the carrier within the meaning of the Convention is the

carrier's place of incorporation, and SAS is domiciled in either Sweden, Denmark, or Norway, or all three; (2) the principal place of business of the carrier excludes the United States because SAS's corporate headquarters are located in Sweden; (3) the relevant contract of transportation in the transportation of passengers is the passenger ticket, and the contract between the Koehlers and SAS was made in Germany; and (4) the place of destination for purposes of article 28 is the ultimate destination of transportation as indicated on the passenger ticket, and the Koehlers' final destination was Germany. SAS therefore argued that the United States is not the proper forum for the Koehlers' action against SAS and their complaint should be dismissed.

In response to SAS's motion, the Koehlers contended that SAS missed a step in its analysis of the application of the Convention, arguing that article 1 of the Convention only defines "international," and in order to define "transportation," the court must look to article 17, which provides:

> "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." 49 U.S.C.A. § 1502, Historical Note, at 433 (West 1988).

Based upon this provision, the Koehlers argued that because they were not on board the aircraft or in the course of embarking or disembarking, the Convention did not apply and thus did not preclude the trial court's jurisdiction.

In reply, SAS claimed that the Koehlers misconstrued the proper application of article 17, which provides a plaintiff with a cause of action arising from personal injuries or death, in determining whether the Convention applies. SAS maintained that a court must first determine whether the Convention applies under article 1 and then determine whether the court has proper subject matter jurisdiction under article 28 before reviewing the requirements and restrictions of article 17.

SAS further argued that notwithstanding some courts have found that even if the Convention applies, a plaintiff's state law claims would not be preempted thereunder, there is a split in the federal circuits regarding this approach. Accordingly, SAS argued that if the trial court found the Convention applied to the Koehlers' complaint and it did not preempt their state law claims, the trial court would still have to dismiss the complaint due to lack of subject matter jurisdiction pursuant to article 28 of the Convention.

On November 17, 1995, the trial court held that the Convention applied to the Koehlers' complaint and granted SAS's motion for summary judgment because, pursuant to article 28, the court lacked subject matter jurisdiction. This appeal followed.

On appeal, the Koehlers contend that the trial court erred in granting SAS's motion for summary judgment based on lack of subject matter jurisdiction, arguing the Convention should never have been applied to the instant case because the Koehlers were not involved in "international transportation" as defined in article 1 of the Convention. They further argue that a court must look to both articles 1 and 17 of the Convention to determine what activity constitutes "international transportation." According to the Koehlers, they were not in the course of any of the operations of embarking or disembarking and thus were not engaged in "international transportation." More specifically, they were nowhere near the gate, were not under the control of SAS, and were merely checking in at the time their injury occurred. Accordingly, the Koehlers argue, they were not engaged in "transportation" at the time of the injury and, thus, the Convention and its jurisdictional limitations do not apply to their claims.

SAS argues, as it did in the trial court, that a court must first look to article 1 of the Convention and its definition of "international transportation" to determine if the Convention applies. If the Convention does apply, the court must then look to article 28's jurisdictional requirements to determine if the plaintiff has filed in the proper forum and, if so, only then can it look to article 17, which provides a plaintiff with a cause of action for damages if the plaintiff was on board the aircraft or embarking or disembarking at the time of the accident. SAS asserts that any other interpretation in determining whether the convention applies is contrary to the plain meaning of the Convention.

The standard of review for summary judgment is *de novo*. *Urban v. Village of Lincolnshire*, 272 Ill. App. 3d 1087, 1094, 651 N.E.2d 683 (1995). A reviewing court must determine whether the trial court correctly ruled that no genuine issue of material fact existed and that judgment was correctly entered for the moving party as a matter of law. *Urban*, 272 Ill. App. 3d at 1094. The reviewing court must view the evidence in a light most favorable to the nonmoving party. *Turner v. Roesner*, 193 Ill. App. 3d 482, 549 N.E.2d 1287 (1990), *appeal denied*, 132 Ill. 2d 555 (1990).

"The scope of the Warsaw Convention is a matter of federal law and federal treaty interpretation, and must be determined from an examination of the 'four corners of the treaty.' " *Maugnie v. Com-*

*pangie Nationale Air France*, 549 F.2d 1256, 1258 (9th Cir. 1977). Treaty interpretation necessarily requires an evaluation of legislative history and the intent of all parties involved in the contract. *Maugnie*, 549 F.2d at 1258; *Wolgel v. Mexicana Airlines*, 821 F.2d 442, 444 (7th Cir. 1987).

A reading of the legislative history of the Convention reveals its purpose is to protect airlines from huge damage claims due to mass air disasters and to establish a system of uniformity regarding claims and the applicable substantive law. *In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267, 1270 (2d Cir. 1991), citing A. Lowenfeld & A. Mendelson, *The United States and the Warsaw Convention*, 80 Harv. L. Rev. 497, 498-99 (1967). Section 22 of the Convention limits the liability of the airlines in order to allow them to establish insurance rates and to lessen potential litigation against the airlines. *In re Air Disaster at Lockerbie, Scotland*, 928 F.2d at 1271.

Initially, the Convention limited a plaintiff's recovery to approximately $8,000; however, in 1966, the Montreal Agreement modified this amount. CAB Agreement 18900, *reprinted in* 49 U.S.C.A. § 1502, Historical Note, at 437-38 (West 1988). The Montreal Agreement adopted a trade-off: Air carriers would be strictly liable, thus eliminating the requirement of proving fault, in exchange for a damage cap of $75,000. *Beaudet v. British Airways, PLC*, 853 F. Supp. 1062, 1065 (N.D. Ill. 1994). Articles 1 and 17 of the Convention indicate that it applies to all international air flights and creates liability in the event of death or bodily injury sustained while *on board the aircraft, or in the course of the operations of embarking or disembarking.*

■ SAS seeks to have this court rule that, whenever a passenger holds a ticket for international travel between signatory countries, any claim against the airline must be controlled by the provisions of the Convention. We cannot agree, however, with this proposition. To do so would mean that once a passenger purchases a ticket for international transportation, the Convention and its jurisdictional requirements apply to any negligent actions of the airline. Such a conclusion would render airlines immune from their negligent acts occurring within the terminal when the passenger is not involved in an "accident," not on board the airplane, or not in the course of the operations of embarking or disembarking. This is clearly not the intent of the drafters of the Convention. Indeed, federal courts in Illinois have recognized this as an untenable "position." Specifically, in *Beaudet*, 853 F. Supp. at 1069-70, the court stated:

> "Under this position, an air carrier's negligence against a passenger having a ticket on one of that carrier's international flights

is entirely excused by the Warsaw Convention if the passenger is not 'on board the aircraft or in the course of any of the operations of embarking or disembarking.' In the opinion of the Court, this conclusion demonstrates the absurdity of Defendant's position. One thing that the Warsaw Convention did not mean to do was to grant international air carriers absolute immunity from their negligence inside the terminal."

We agree with plaintiffs here that the Convention does not create an exclusive cause of action for any injury incurred by a passenger holding a ticket for international travel. See *Abramson v. Japan Airlines Co.*, 739 F.2d 130, 134 (3d Cir. 1984) ("[T]he Warsaw Convention's limitation and theory of liability is exclusive when it applies *** but it does not preclude alternative theories of recovery"); *Tandon v. United Air Lines*, 926 F. Supp. 366, 370 (S.D.N.Y. 1996) ("Courts addressing the issue have held that, although the Warsaw Convention preempts state law claims falling within its scope, it does not preempt claims that are not covered by its provisions"); *In re Air Disaster at Lockerbie, Scotland*, 928 F.2d at 1273 ("[The issue is not] whether a plaintiff may bring a state cause of action when the claim does not arise under the Warsaw Convention, which a plaintiff plainly may institute"); *Walker v. Eastern Air Lines, Inc.*, 785 F. Supp. 1168, 1170 (S.D.N.Y. 1992) ("[N]othing in the text of the Warsaw Convention precludes the plaintiff from instituting an action against the air carrier to recover for *** death or bodily injury under state law"). Clearly, the drafters of the Convention "intended to ensure uniformity in air carriers' liability for death or bodily injury in the event of accidents, rather than uniformity in air carriers' liability for death or bodily injury generally." *Walker*, 785 F. Supp. at 1171.

This analysis is consistent with the intent of the drafters of the Convention, who clearly did not intend for the Convention to preclude all claims not described within the text of the treaty. In discussing whether article 19 of the Convention, which pertains to "damages occasioned by delay in the transportation by air of passengers, baggage, or goods," would bar a claim for total nonperformance of a contract between a ticket holder and the airline, Mr. Ambrosini, the delegate from Italy, noted that article 19 did not provide a remedy for nonperformance. *Wolgel*, 821 F.2d at 444. Mr. Ambrosini suggested that the treaty be amended to include a provision for total nonperformance; however, the drafters determined that there "was no need for a remedy in the Convention for total nonperformance of the contract, because in such a case the injured party has a remedy under the law of his or her home country." *Wolgel*, 821 F.2d at 444. Similarly, in the present case, no provision exists covering the Koehlers' noncon-

tractual claims against SAS. As in the case of nonperformance of the contract, the Koehlers' noncontractual claims may be remedied under the law of their home country if they can establish jurisdiction.

We briefly observe that SAS's reliance on *Duff v. Varig Airlines, Inc., S.A.*, 185 Ill. App. 3d 992, 542 N.E.2d 69 (1989), in support of its argument that courts must determine the application of the Convention by looking to article 1 for the definition of "international transportation" and then apply the jurisdictional limitations enumerated in article 28 before evaluating the liability provision in article 17, is misplaced. *Duff* is not inconsistent with our decision in the present case. In *Duff*, the defendant airline incorrectly advised the plaintiff, who was traveling from Brazil to South Africa, of his departure time. As a result, the plaintiff missed his flight and incurred expenses of $2,500. The *Duff* court held:

> "If the passenger's ticket provides for international transportation as defined above [Article 1], 'this is sufficient to invoke the [Warsaw] Convention.' [Citation.] Accordingly, '[w]hen the contract of the parties provide[s] for transportation between certain designated termini, the provisions of the Convention automatically apply and exclusively govern the rights and liabilities of the parties.' [Citation.]" 185 Ill. App. 3d at 995.

The *Duff* court reasoned that because the Warsaw Convention applied under article 1, the plaintiff was required to meet the jurisdictional restrictions enumerated in the Convention. Because the plaintiff had not brought the suit in one of the four fora listed in the Convention, the court dismissed the case for lack of subject matter jurisdiction.

*Duff* is distinguishable from the case at bar, however. The issue in *Duff* was whether the Convention applied to the defendant airline's breach of its *contractual* duties. Clearly, under article 1, a contract claim based on the ticket which provided for international transportation falls within the scope of the Convention. Here, although one of the Koehlers' claims is a contract claim that is subject to the Convention, their claims for false arrest and imprisonment, defamation, and intentional infliction of emotional distress clearly do not fall within the scope of the types of injuries the Convention was intended to cover.

For the reasons stated, therefore, we affirm the circuit court's grant of summary judgment on plaintiffs' breach of contract claim, but reverse the grant of summary judgment as to plaintiffs' claims alleging false arrest and imprisonment, defamation, and intentional infliction of emotional distress, and remand the cause to the circuit

court for consideration of these claims, provided that plaintiffs can establish jurisdiction under the laws of this state.

Affirmed in part and reversed in part; cause remanded.

HARTMAN, P.J., and SCARIANO, J., concur.