C.A.M. AFFILIATES, INC., *et al.*, Plaintiffs-Appellees, v. FIRST AMERICAN TITLE INSURANCE COMPANY, Defendant-Appellant and Counterdefendant and Counterplaintiff (Republic Title Company, Defendant and Counterplaintiff and Third-Party Plaintiff; Bank of Commerce and Industry *et al.*, Counterdefendants; TMP Investments, Inc., Third-Party Defendant and Third-Party Plaintiff; Donald Carrillo, Third-Party Defendant).

First District (5th Division) No. 1—98—2039

Opinion filed August 6, 1999.

Charles W. Siragusa, of Crowley, Barrett & Karaba, Ltd., of Chicago, for appellant.

Ira N. Helfgot, of Law Offices of Ira N. Helfgot, of Chicago, and David W. Loivun, Ltd., of South Barrington, for appellees.

JUSTICE THEIS delivered the opinion of the court:

Defendant First American Title Insurance Company (First American) appeals from the circuit court's order which granted summary judgment in favor of plaintiffs C.A.M. Affiliates, Ltd. (C.A.M.), and Chicago Western Service, Inc. (Chicago Western), and denied First American's motion for partial summary judgment. First American contends that the court impermissibly decided issues of fact when it found that First American, acting through its agent Republic Title Company (Republic), waived a title exception during a real estate closing. First American also argues that liability to C.A.M., if any, is

limited to $4,500 pursuant to a section of the title insurance policy. For the following reasons, we affirm.

The issues in this case stem from events that took place leading up to and during a real estate closing conducted by Republic. On October 26, 1993, Chicago Western closed on its purchase of a single-family home located in Northlake, Illinois (the property). Wanda Stearns was the Republic employee who issued the title commitment and handled the closing for the property. The relationship between Republic and First American was governed by a document entitled "Agency Contract," which provided that Republic was First American's agent for the purpose of issuing title insurance policies on behalf of First American.

The evidence presented to the circuit court in this case included the closing documents, written correspondence between the parties, the Agency Contract between Republic and First American, and affidavits of several individuals. First American maintains that the affidavit of David Koivun, the attorney who represented Chicago Western at the closing, should have been stricken for violating the Rules of Professional Conduct. We need not address this argument because his affidavit does not bear on the resolution of the issues in this case. The following facts were derived from the other evidence that was before the circuit court.

The purchase price of the property was $106,500, of which $74,500 was financed through a mortgage issued by Bank of Commerce & Industry (Bank of Commerce). As a condition to receiving the mortgage loan, Bank of Commerce required that the closing be done through a third-party escrowee. Both the seller and Chicago Western signed a document obtaining the services of Republic to act as the third-party escrowee. The document provided that Chicago Western would direct Republic to disburse the money held in escrow only when Republic could issue a title insurance policy insuring the fee simple title of the property, subject to only the general real estate taxes for 1993 (and thereafter) and to Chicago Western's mortgage loan. Chicago Western paid the $150 fee to Republic for performing the escrow services.

According to Stearns' affidavit, she sent a commitment of title insurance for the property to Chicago Western and Bank of Commerce before the closing. This title commitment contained a page entitled "Schedule B," which listed exceptions to the title insurance policies that would be issued at the closing. Only exceptions 1 and 2 are pertinent here. Exception 1 of the title commitment stated that the title insurance policy to be issued would be subject to a lien of taxes for the years 1989, 1990, 1992, 1993 and thereafter. Exception 2

provided that the 1989 taxes had been sold for $1,779.14, and that the tax buyer had added the 1990 taxes to the sale. Stearns' initials appear next to exception 2 on the title commitment, indicating that the exception was waived, but they do not appear next to exception 1.

At the closing, Stearns was provided with a $5,983.69 check from the seller constituting the estimated amount needed to redeem the 1989 and 1990 taxes from the tax buyer. However, she was not responsible for redeeming the taxes as this was to be done by other Republic employees. Nor did Stearns' duties include issuing the title insurance policies to Chicago Western and Bank of Commerce. Rather, this also was done by other Republic employees after the closing, based upon the title commitment as modified or endorsed at the closing. Stearns later learned that the title insurance policies issued to Chicago Western and Bank of Commerce contained exception 1. She stated that this inclusion of exception 1 was an error.

Kathy Durham, a Republic employee who handled unusual post-closing situations, stated that, in November 1993, a Republic employee attempted to redeem the tax sale with the check from the closing. However, the check was not accepted because it was less than the amount required to redeem the taxes. Durham attempted to contact the seller's attorney several times to discuss the issue, but the attorney never returned her telephone calls. She finally mailed to the attorney the check and a letter requesting that he obtain the additional money needed to redeem the taxes. Durham did not receive a response from him.

Ronald Lake is an officer, shareholder, and employee of Republic. His affidavit states that, after the closing, the title commitment went to Republic's clerical staff for the processing of the final title insurance policies. The title insurance policies were not issued to Chicago Western and Bank of Commerce until June 24, 1994. These policies did not contain exception 2, but did contain exception 1. Lake avers that the inclusion of exception 1 was an error made by the clerical staff. By waiving exception 2, he claims it was unnecessary for Stearns also to waive exception 1 because both exceptions sufficiently warned of the existence of tax liens on the property.

Immediately upon receipt of the policies, Chicago Western and Bank of Commerce contacted Republic to inform it of the erroneous inclusion of exception 1. By this time, the tax buyer of the 1989 and 1990 taxes had obtained a deed for the property and taken possession from Chicago Western and Bank of Commerce. Republic contacted First American to explain that the policies needed to be amended and that Chicago Western and Bank of Commerce had valid policy claims. First American denied the claims, maintaining that the presence of

exception 1 meant the policies were subject to the tax issues for 1989 and 1990.

Chicago Western and Bank of Commerce, the original plaintiffs in this case, filed suit for breach of the title insurance policies. On December 31, 1996, Bank of Commerce assigned its rights, title, and interest in Chicago Western's note and mortgage, as well as its claims against Republic and First American, to C.A.M. for $70,000. The trial court granted C.A.M.'s request to substitute in for Bank of Commerce as a party to this cause of action.

On March 4, 1998, the trial court granted plaintiffs' motions for summary judgment and denied First American's cross-motion for summary judgment against C.A.M. The trial court determined that the loss of the property "occurred as a result of the negligence in the handling of *** the purchase taxes for 1989 and '90, which ultimately turned into a tax deed," and not as a result of the escrow functions performed by Republic. The court also found that the agency contract between First American and Republic gave Republic the authority to waive exceptions to the title commitments and policies it issued. The court entered judgment for C.A.M. in the amount of $74,500, which represented the amount of the mortgage. Judgment also was entered for Chicago Western in the amount of $31,495, which was Chicago Western's insured equity in the property. First American appeals these rulings.

■ We review the granting of summary judgment *de novo*. *Koehler v. Scandinavian Airlines Systems*, 285 Ill. App. 3d 520, 524, 674 N.E.2d 112, 116 (1996). Summary judgment is proper when the pleadings, depositions, and affidavits, taken in the light most favorable to the non-movant, present no genuine issue of material fact and show that the movant is entitled to judgment as a matter of law. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 358, 657 N.E.2d 894, 897 (1995).

The first issue we must address is whether Stearns waived exception 1 on the title commitment. First American argues that the title commitment unambiguously shows that exception 1 was not waived. Stearns' initials appear adjacent to exceptions 2 through 6 of the document, but do not appear next to exception 1. The absence of her initials next to exception 1 clearly indicates, First American claims, that the parties did not intend to waive that exception. Even if it is ambiguous as to whether Stearns waived exception 1, First American asserts that the interpretation of the contract is a fact question. Plaintiffs contend that the affidavits they presented with their motions for summary judgment, to which First American did not present any counterevidence, establish that exception 1 was waived. The affidavits state that the absence of Stearns' initials next to exception 1

on the title commitment and the appearance of exception 1 on the title policies were errors.

■ The interpretation of a party's agreement is a question of law to be determined by the appellate court *de novo*. *Lewis X. Cohen Insurance Trust v. Stern*, 297 Ill. App. 3d 220, 225, 696 N.E.2d 743, 747 (1998). Whether a contract is clear or ambiguous also is a question of law for the court. *Stern*, 297 Ill. App. 3d at .232, 696 N.E.2d at 751. When interpreting a contract, the primary objective is to give effect to the parties' intentions. *Stern*, 297 Ill. App. 3d at 232, 696 N.E.2d at 751. If a contract is clear and unambiguous, the court must determine the intent of the parties solely from the plain language of the contract. *Stern*, 297 Ill. App. 3d at 232, 696 N.E.2d at 751. However, where the contract is ambiguous, evidence outside the document may be considered to discern the parties' intent. *NWI International, Inc. v. Edgewood Bank*, 291 Ill. App. 3d 247, 257, 684 N.E.2d 401, 408 (1997). The meaning of the contract can be determined by the court as a matter of law if the parties' intent may be determined from undisputed facts. *NWI*, 291 Ill. App. 3d at 257, 684 N.E.2d at 408.

■ After examining the content of the exceptions, we find that the contract is ambiguous. Both exceptions 1 and 2 relate to the tax issues for 1989 and 1990, yet Stearns' initials appear only beside exception 2. Given that exception 2 explains the issues with the 1989 and 1990 taxes in more detail than exception 1, it is not evident from the face of the document how exception 2 could be waived without any modifications or endorsements made to exception 1. This conflict of terms makes it impossible to determine whether the parties intended to waive the 1989 and 1990 taxes, or whether title was to be taken subject to those tax issues. This ambiguity requires us to examine the evidence outside of the document itself to determine the intent of the parties.

■ The undisputed facts show that the parties intended to waive exception 1. Plaintiffs presented the affidavits of Lake and Stearns as evidence of the parties' intent. Both affidavits state that the failure to waive exception 1 was error, whether by Stearns' failing to initial exception 1 or by the clerical staff's including exception 1 in the title policies that were issued. First American has not presented any evidence to counter these facts. Therefore, we find the parties intended the title to be protected from losses arising from problems with the 1989 and 1990 taxes.

Having determined that exception 1 was waived, we next must determine whether Stearns, as a Republic employee, was First American's agent for this closing and, if so, whether those actions caused the title loss. First American agrees that if Stearns was acting

pursuant to the Agency Contract between First American and Republic, then it would be liable for claims made against the title insurance policies. However, First American argues that Stearns was not acting as First American's agent because she was performing duties as an escrowee during the closing, and Republic's agency authority does not extend to escrowee activities. Plaintiffs contend that Stearns' and Republic's actions in issuing the title commitment, in accordance with the Agency Contract, caused the loss in this case.

■ An agent's authority may be either actual or apparent, and actual authority may be express or implied. *First American Title Insurance Co. v. TCF Bank*, 286 Ill. App. 3d 268, 274, 676 N.E.2d 1003, 1008 (1997). Only the words and conduct of the alleged principal, not the alleged agent, establish the authority of an agent. *TCF Bank*, 286 Ill. App. 3d at 274, 676 N.E.2d at 1008. An agent has express authority when the principal explicitly grants the agent the authority to perform a particular act. *Lydon v. Eagle Food Centers, Inc.*, 297 Ill. App. 3d 90, 94, 696 N.E.2d 1211, 1215 (1998). Although the existence and scope of an agency relationship are generally questions of fact, a court may decide the issue if the relationship is so clear as to be undisputed. *Athanas v. City of Lake Forest*, 276 Ill. App. 3d 48, 54, 657 N.E.2d 1031, 1036 (1995).

■ We believe that First American's relationship with plaintiff is so clear that we may decide the issue. The evidence shows that Stearns had the actual authority to waive exceptions to title commitments. Paragraph 2 of the Agency Contract between Republic and First American states, "Agent is authorized to issue, in the name of Principal, title insurance commitments, binders and policies (including endorsements thereof)." This language expressly granted Republic the actual authority to endorse, or waive, provisions in the title commitments and policies. Stearns acted pursuant to this grant of authority when she waived exception 2 and, contrary to the parties' intentions, erroneously failed to waive exception 1. Similarly, the other Republic employees also acted pursuant to the Agency Contract when they subsequently issued the title policies.

■ Further, we disagree with First American that Stearns' and Republic's actions as escrow agents alone caused the title loss. Although the loss occurred partially as a result of the check not being sufficient to cover the amount of the redemption, the title loss also occurred because of Stearns' failure to waive exception 1 and the subsequent erroneous transfer of this exception to the policies by other Republic employees. Chicago Western purchased the title insurance to insure against the loss of title resulting from problems with the taxes. Plaintiffs' losses due to the insufficient redemption amount

would have been covered by the title insurance if exception 1 had been properly waived, as the parties intended. Thus, First American is bound, through Republic's actions, to cover plaintiffs for their losses.

■ Lastly, First American claims that if C.A.M. has a valid claim against First American, C.A.M.'s recovery is limited to $4,500, which is the difference between the amount of the mortgage and the amount C.A.M. paid for the assignment. First American contends that section 9(b) of the title insurance policy requires the limitation. This section states:

> "Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the amount of insurance stated in Schedule A."

We disagree with First American. C.A.M.'s payment was not a repayment of the principal of the indebtedness. Rather, it was simply a transfer of the indebtedness from one entity to another for a premium. Consequently, this section of the insurance policy does not apply, and First American is responsible for the claims made by plaintiffs against their policies.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN and GREIMAN, JJ., concur.