In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3015

Shelley Opp, an individual,

Plaintiff-Appellant,

v.

Wheaton Van Lines, Incorporated,
d/b/a Wheaton World Wide Moving,
an Indiana corporation, and Soraghan
Moving & Storage, Incorporated,
an Illinois corporation,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 7781--Arlander Keys, Magistrate Judge.

Argued May 9, 2000--Decided November 3, 2000

Before Manion, Kanne, and Rovner, Circuit Judges.

Manion, Circuit Judge. Shelley Opp sued two carriers, Wheaton Van Lines and Soraghan Moving and Storage, alleging fraud and seeking to recover the full value of her property that was damaged during shipment. The carriers moved for summary judgment, arguing that there was no evidence of fraud, and that their liability for damaging Ms. Opp's property was limited as set forth in the bill of lading that was signed by her ex-husband, Mr. Opp. The district court granted the defendants' motions, finding no evidence of fraud, and concluding that Mr. Opp had the authority to bind Ms. Opp to the terms of the bill of lading. Ms. Opp appeals. We affirm the grant of summary judgment on the fraud claim, but reverse and remand on the property damage claim.

I.

Shelley Opp lived in California with her husband, Richard Opp, until they sought a divorce in August 1996, and Ms. Opp moved to Illinois. In June 1997, Ms. Opp contacted Soraghan Moving and Storage (an agent of Wheaton Van Lines) to move her personal property from California to

Illinois. She provided Soraghan with a list of her items, and Linda Kloempken (a Soraghan employee) phoned Ms. Opp to give her an estimate of the moving charges. Ms. Opp then notified Kloempken that she wanted to insure her property for its full value of $10,000.00. And Soraghan movers conducted a "walk-through" of the California residence at which Mr. Opp presided at Ms. Opp's request.

Kloempken then faxed to Ms. Opp an "Estimate/Order for Service" form which included the following: "NOTICE: ACTUAL DECLARED VALUE MUST BE DETERMINED BY SHIPPER PRIOR TO LOADING AND SO INDICATED IN THE BILL OF LADING." The estimate form also contained the following printed and handwritten information: "SHIPPER INTENDS TO DECLARE A VALUATION OF: /s (shipper to advise $10,000 Full Replacement 85, 65, 45)." Ms. Opp signed the form. According to Kloempken, she explained to Ms. Opp that the phrase "shipper to advise" meant that Ms. Opp or her representative must advise the mover at the time the shipment was picked up whether Ms. Opp would like full replacement coverage of $10,000.00. According to Ms. Opp, she was never informed that the person releasing her property in California would have to sign anything, declare any value for her property, or do anything other than give the movers access to her belongings. The estimate form also provided a location where Ms. Opp could designate someone as her "true and lawful representative," but she made no such designation.

On the day of the move, the movers in California called Ms. Opp in Illinois to notify her that their arrival at the California home would be delayed by a half-hour due to a flat tire. Ms. Opp then phoned Mr. Opp at his office and asked him to go to the house, open the door, and "let the movers in." Ms. Opp also told Kloempken that "someone" would be at the California home to give the movers access to her property. While the movers were loading Ms. Opp's property from the California home, Mr. Opp signed the bill of lading on a line that indicated that he was Ms. Opp's authorized agent, and he allegedly agreed to limit the carriers' liability for her property at $.60 per pound./1 Mr. Opp also signed an inventory of the property that indicated that he was its "owner or authorized agent." After the movers left, Mr. Opp called Ms. Opp to tell her that the movers "picked up your stuff."

On July 8, 1997, the truck carrying Ms. Opp's belongings was struck by a train, damaging most of her property. On that same day, a Soraghan employee (Pamela Comparin) phoned Ms. Opp to request her to bring a check to Soraghan's office

to pay for the shipment. Ms. Opp brought a cashier's check to the office that same day. Comparin notified Ms. Opp about the damage to her property on July 14, 1997, and she returned Ms. Opp's check on July 15.

Ms. Opp inspected her damaged property on July 15, and estimated its full replacement value to be over $10,000.00. The carriers claimed that their liability was limited according to the bill of lading, and they tendered a check to Ms. Opp in the amount of $2,625.00, which she never cashed or returned.

Instead, Ms. Opp sued the carriers pursuant to the Carmack Amendment, 49 U.S.C. sec. 11707 et seq., seeking (in Count I of her Amended Complaint) to recover $10,000.00 for property damage, and alleging (in Count II of her Amended Complaint) that Soraghan committed fraud by requesting an immediate payment for the shipment on the same day that it allegedly learned about the damage to Ms. Opp's property. The carriers moved for summary judgment, arguing that Mr. Opp had the authority to sign the bill of lading and limit the carriers' liability. Soraghan also moved for summary judgment on the fraud claim, arguing that there was no evidence of fraud, and that Ms. Opp sustained no damages because Soraghan returned her uncashed check seven days after she delivered it to Soraghan. The district court granted the carriers' motions, finding that Mr. Opp had the actual and apparent authority to sign the bill of lading as Ms. Opp's agent, and concluding that Ms. Opp failed to establish a triable issue of fact to support her fraud claim. Ms. Opp appeals.

II.

"We review the district court's entry of summary judgment de novo," Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1003 (7th Cir. 2000), viewing all of the facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party. Id. Summary judgment is proper if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999) (citing Fed. R. Civ. P. 56(c)). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 149 (7th Cir. 1994).

A. The Property Damage Claim

Ms. Opp argues on appeal that the district court

erred in granting summary judgment for the carriers on her claim of damages in the amount of $10,000.00--the full value of her property. She asserts that there is a genuine issue of material fact as to whether the carriers satisfied the conditions necessary to limit their liability under the Carmack Amendment. The Carmack Amendment makes carriers who transport goods liable for the "actual loss or injury to the property caused by [the receiving or delivering carrier]," 49 U.S.C. sec. 14706(a)(1), unless the carrier does the following to limit its liability: (1) maintain an appropriate tariff pursuant to 42 U.S.C. sec. 13710(a)(1), Jackson v. Brook Ledge, Inc., 991 F.Supp. 640, 645 (E.D.Ky. 1997); (2) obtain the shipper's agreement as to her choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. Hughes v. United Van Lines, Inc., 829 F.2d 1407, 1415 (7th Cir. 1987); 49 U.S.C. sec. 14706(c)(1)(A). According to Ms. Opp, the district court's decision to grant summary judgment was improper because she never authorized Mr. Opp to sign the bill of lading and limit the carriers' liability, and thus the carriers never obtained her agreement as to her choice of liability.

  Ms. Opp's property damage claim requires us to apply the principles of agency law to determine whether Mr. Opp had the authority to act as Ms. Opp's agent and limit the carriers' liability when he signed the bill of lading. The district court recognized that "[i]t is not clear whether actions arising from the Carmack Amendment are governed by the federal common law of agency, or by the state common law," Opp v. Wheaton Van Lines, Inc., 56 F.Supp.2d 1027, 1035 n. 6 (N.D. Ill. 1999), and it applied Illinois law because "federal and Illinois laws of agency both recognize that an agent's authority can be actual or apparent." Id. The parties do not challenge the district court's application of Illinois law, and we will apply it as well. We also note that the Illinois law of agency, as well as the federal common law of agency, accord with the Restatement. See Moriarty v. Glueckert Funeral Home, Ltd., 155 F.3d 859, 865-66 n. 15 (7th Cir. 1998) (the federal courts have relied on the Restatement of Agency as a valuable source for establishing the federal common law of agency); see also National Diamond Syndicate, Inc. v. United Parcel Service, Inc., 897 F.2d 253, 259 (7th Cir. 1990) (the Restatement accords with Illinois agency principles of actual and implied authority); see also Emmenegger Const. Co., Inc. v. King, 431 N.E.2d 738, 742-43 (Ill. App. Ct. 1982) ("The law of agency in Illinois is in

accord with the Restatement of Agency (Second) on the subject of apparent authority.").

"An agent's authority may be either actual or apparent, and actual authority may be express or implied." C.A.M. Affiliates, Inc. v. First American Title Ins. Co., 715 N.E.2d 778, 783 (Ill. App. Ct. 1999). And "[o]nly the words or conduct of the alleged principal, not the alleged agent, establish the [actual or apparent] authority of an agent." Id.

We first note that the record clearly demonstrates that Mr. Opp never received the express authority to represent Ms. Opp and to limit the carriers' liability. "An agent has express authority when the principal explicitly grants the agent the authority to perform a particular act." Id. There is no evidence in this case that Ms. Opp explicitly granted authority to Mr. Opp to bind her to an agreement that limited the carriers' liability for her goods. Ms. Opp stated in her affidavit that she never requested or intended Mr. Opp to do anything other than to open the door and allow the movers to remove her property. And the record contains no testimony from Mr. Opp. Because the record provides no counteraffidavits that establish an explicit agency relationship between Ms. and Mr. Opp, we must accept Ms. Opp's affidavit as true and conclude that she never explicitly granted Mr. Opp the authority to limit the carriers' liability. See Lydon v. Eagle Food Centers, Inc., 696 N.E.2d 1211, 1215 (Ill. App. Ct. 1998).

We next determine whether Mr. Opp had the implied authority to limit the carriers' liability. "Implied authority is actual authority that is implied by facts and circumstances and it may be proved by circumstantial evidence." Wasleff v. Dever, 550 N.E.2d 1132, 1138 (Ill. App. Ct. 1990). "[A]n agent has implied authority for the performance or transaction of anything reasonably necessary to effective execution of his express authority." Advance Mortg. Corp. v. Concordia Mut. Life Ass'n, 481 N.E.2d 1025, 1029 (Ill. App. Ct. 1985) (quoting 2A C.J.S. Agency sec. 154 (1972)); see also Restatement (Second) of Agency sec. 35. Thus we must determine whether it was reasonably necessary for Mr. Opp to sign the bill of lading in order to execute his express authority to open the door to give the movers access to Ms. Opp's property.

The carriers argue that because Ms. Opp allegedly knew that the bill of lading had to be signed when her property was picked up, but she arranged for Mr. Opp to be the only person present in California for the move, Ms. Opp's request for Mr. Opp to tender the goods to the

movers also included the necessary authority for him to sign the bill of lading. But as noted above, Ms. Opp only told Mr. Opp to open the door. She made no request for him to sign anything, or to make any agreement as to the carriers' liability. Ms. Opp also testified that she was never informed that the person releasing her property in California would have to sign a bill of lading and declare a value for her property. Moreover, the record contains no testimony from Mr. Opp at all, and thus it is unclear whether he ever implied from Ms. Opp's request that he was also authorized to limit the carriers' liability, or whether he merely thought that he was signing forms to confirm that Ms. Opp's goods were taken from the home. The record also lacks testimony from any of the movers who picked up Ms. Opp's personal property in California, and we have no indication from them what Mr. Opp understood about the significance of his signature (and alleged notations) on the bill of lading. Thus we conclude that there is insufficient evidence to support a grant of summary judgment for the carriers on this issue.

We must then consider whether Mr. Opp had the apparent authority to sign the bill of lading and limit the carriers' liability. Under the doctrine of apparent authority, "a principal will be bound not only by the authority that it actually gives to another, but also by the authority that it appears to give." Petrovich v. Share Health Plan of Illinois, Inc., 719 N.E.2d 756, 765 (Ill. 1999). "Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf." Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp., 577 N.E.2d 1344, 1350 (Ill. App. Ct. 1991). Thus we must determine whether the evidence demonstrates that Ms. Opp's words or conduct created a reasonable impression in the carriers that Mr. Opp had the authority to sign the bill of lading and limit their liability.

The carriers argue that they reasonably believed that Mr. Opp had the authority to sign the bill of lading because Ms. Opp allegedly knew that a bill of lading had to be signed when her goods were picked up, she had arranged for the carriers to contact Mr. Opp to preside at the prior walk-through, and she had also arranged for Mr. Opp to be the only person present at the California home to tender the goods. But material facts in the record also justify a reasonable inference that Mr. Opp did not have the apparent authority to limit the carriers' liability. It is undisputed that Ms. Opp told Kloempken at Soraghan that she wanted the full replacement value of $10,000.00 on her goods, which is reflected on Wheaton's Estimate/Order for Service form. Ms. Opp never

designated a "lawful representative" on the space provided on the estimate form, and thus Wheaton's own form lacked any indication that Mr. Opp was her agent. And when the movers were delayed by a flat tire on their moving truck, they called to notify Ms. Opp in Illinois, not Mr. Opp in California. Additionally, Ms. Opp testified that the carriers never informed her that the person releasing her property in California would have to sign anything, declare any value for her property, or do anything other than to give the movers access to her belongings, which indicates that the carriers could not reasonably conclude that she knew that the bill of lading had to be signed in California, and that Mr. Opp had that authority. And there is no evidence in the record that the carriers had any knowledge that Ms. Opp ever discussed the valuation of her property with Mr. Opp. We conclude, therefore, that summary judgment is precluded because the record provides sufficient evidence to enable a reasonable jury to find that Mr. Opp lacked the apparent authority to limit the carriers' liability./2 See Roger, 21 F.3d at 149.

B.  The Fraud Claim

   Ms. Opp also challenges the district court's denial of her fraud claim. Because Soraghan's employee, Ms. Comparin, called Ms. Opp seeking full payment of the shipping charge on the same day her property was destroyed, Ms. Opp suspects fraud. The district court concluded that Comparin's affidavit asserting that at the time of the call she "did not know that the truck carrying Ms. Opp's belongings was struck by a train" was uncontested, so there was no genuine issue of fact on that count. We also note that the record on appeal indicates that after the wreck, Soraghan returned Ms. Opp's check uncashed. While the validity of this claim seems unlikely on the present record, Ms. Opp's one-paragraph argument on appeal cites no legal authority nor any facts from the record that dispute the district court's conclusion. Thus we need not address the matter further, and affirm the district court's decision to grant Soraghan's motion for summary judgment on this claim. See Mason, 974 F.2d at 901.

III.

   We conclude that summary judgment is precluded on the property damage claim because there are genuine issues of material fact as to whether Mr. Opp had the implied or apparent authority to limit the carriers' liability. We decline to consider Ms. Opp's fraud claim on appeal because it lacks factual and legal support. Accordingly, we AFFIRM the district court's decision to grant

Soraghan's summary judgment motion on Ms. Opp's fraud claim, and REVERSE and REMAND the district court's decision to grant the carriers' summary judgment motion on Ms. Opp's property damage claim.

/1 While the parties agree that Mr. Opp signed the bill of lading, they dispute whether he made the notation that limited the carriers' liability to $.60 per pound.

2/ We note that Ms. Opp also challenges the district court's decision by arguing that the carriers failed to demonstrate that they met the other three elements required to limit their liability under the Carmack Amendment. First, Ms. Opp argues that the carriers failed to show that they maintained a tariff with the Interstate Commerce Commission (ICC) because they neglected to lay the foundation for the tariff they attached in their summary judgment motion, and because the affidavit submitted in their reply brief (to lay the foundation for the tariff) is inadmissible. But Ms. Opp's argument relies on outdated law, as carriers are no longer required to keep a tariff on file with the ICC. Jackson, 991 F.Supp. at 645. And her attack on the admissibility of the affidavit is waived because she failed to raise it in the district court. See Karazanos v. Madison Two Associates, 147 F.3d 624, 629 (7th Cir. 1998); see also Friedel v. City of Madison, 832 F.2d 965, 971 n. 4 (7th Cir. 1987). Furthermore, Ms. Opp presents no evidence to contradict the carriers' affidavit, and thus we agree with the district court that this claim fails.

Ms. Opp also argues that the carriers never established that they gave her a reasonable opportunity to choose between two or more levels of liability, and never issued a receipt or bill of lading to her prior to moving the shipment. But her arguments lack factual or legal support, and thus we decline to consider them. See United States v. Mason, 974 F.2d 897, 901 (7th Cir. 1992).