FIFTH DIVISION

DECEMBER 30, 2004

No. 1-03-1727

AMIGO'S INN, INC. , d/b/a  Amigo's Inn, ) Appeal from the

Hector Gonzalez, President, ) Circuit Court of

) Cook County.

Plaintiff-Appellant, )

)

v. )

)

THE LICENSE APPEAL COMMISSION OF THE )

CITY OF CHICAGO; ANTHONY CALABRESE, )

Chairman; IRVING KOPPEL, License Appeal )

Commissioner; RICHARD M. DALEY, Mayor of )

the City of Chicago and Liquor Control Commissioner; )

PHILIP CLINE, Superintendent, CHICAGO POLICE )

DEPARTMENT, ) Honorable

) Richard A. Siebel,

Defendant-Appellees. ) Judge Presiding. 

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Amigo's Inn, Inc., d/b/a Amigo's Inn, appeals from an order of the circuit court of Cook County affirming an administrative decision of defendant, Mayor Richard M. Daley, by and through the License Appeal Commission of the City of Chicago (Commission), revoking plaintiff's liquor license.  On appeal, plaintiff contends that:  (1) the finding of the Commission that a security guard was an agent of Amigo's Inn was against the manifest weight of the evidence and an error of law; and (2) the sanction of revocation was an abuse of discretion.  For the following reasons, we reverse the judgment of the trial court.

BACKGROUND

The record reveals the following relevant facts.  Plaintiff, Amigo's Inn, Inc., and doing business as Amigo's Inn, held a tavern license for the premises located at 1615 W. 43rd Street, Chicago.  Hector Gonzalez is the president of the Amigo's Inn, Inc.  On July 31, 2001, defendants, the Local Liquor Control Commissioner, acting through the Local Liquor Control Commission (LLCC), published an amended notice of hearing charging Amigo's Inn with five violations of the Liquor Control Act (235 ILCS 5/1.1 
et seq
. (West 2000)), alleging that Amigo's Inn, by and through its agent, Francisco Sanchez, possessed the controlled substances of cocaine or cannabis on the premises, with intent to deliver on March 17, 2001.

 The following facts were adduced at an evidentiary hearing conducted by the LLCC:

Initially, prior orders of disposition of the LLCC involving the sale of alcohol to minors and gambling on the premises of Amigo's Inn were admitted into evidence without objection.  In addition, the toxicology report on the drugs confiscated at the premises was admitted without objection. 

Chicago police officer John Valtierra testified that on March 17, 2001, he and his 9th District Tactical team were investigating drug and gang problems and in that capacity entered Amigo's Inn at about 10 p.m.  Upon entering the premises, Officer Valtierra observed Francisco Sanchez, a security guard about two or three feet away from the door standing near a jukebox.  Sanchez was dressed in what appeared to be a police officer uniform lacking police badges or insignia.  Sanchez wore a badge around his neck displaying an insignia of a flag and a hat displaying the word "Security."

Officer Valtierra observed Sanchez make a "furtive" or "concealing movement" with his left hand and drop three plastic bags to the ground.  The officer recovered the bags and opined that two of the bags contained cannabis while a third contained a white powder which he thought to be cocaine.  Officer Valtierra placed Sanchez under arrest and handed the bags to his partner while he searched Sanchez.  Officer Valtierra recovered six additional plastic bags from Sanchez' person all containing what appeared to be cocaine. Concurrently, the other members of the team conducted a license investigation of the premises.  Later, at the police station, another officer recovered an additional three bags of controlled substances in Sanchez' pocket, $340 United States currency and a cellular telephone.

Officer Valtierra testified as to statements made by Sanchez after his arrest and removal from the premises.   Officer Valtierra stated that Sanchez told him that he was a security guard for Amigo's Inn and that he sold drugs to make extra money for himself.  Plaintiff objected to admission of Sanchez' statements. The Commission admitted Sanchez' statements as "admissions against interest, and not for the purpose of establishing that Sanchez acted within the scope of his authority or that he was an 'agent' of Amigo's Inn."

On cross-examination, Valtierra acknowledged that when he arrived at Amigo's Inn, Sanchez was not standing outside the premises or at the door and did not ask Officer Valtierra for identification or payment of a cover charge.  Officer Valtierra did not see Sanchez talking to anyone inside the premises nor did he see Sanchez make any attempted sale or transfer of a controlled substance in Amigo's Inn.  Officer Valtierra spoke to the bartender, who had no knowledge of the existence of narcotics on the premises that evening. 

On redirect examination, Officer Valtierra testified that no more than 10 seconds elapsed between his entry into the premises and his observations about Sanchez.  The officer testified, over plaintiff's objection, that he spoke with one of the four bartenders on duty and she told him that Sanchez was a security guard employed by the "owner" and that she did not know the owner's name.

Police officers Ignacio Hernandez and Thomas Buehler testified to the same essential facts as those testified to by Officer Valtierra, including the fact that Sanchez was not observed doing anything except standing by the juke box, and dropping three bags on the floor as the officers entered the premises.  Officer Hernandez stated that the team went to Amigo's Inn in response to Chicago Alternative Policing Strategy (CAPS) complaints of narcotics being sold and "gang bangers loitering in that establishment."

Hector Gonzalez testified that he has been president of Amigo's Inn since 1990.  Gonzalez was not present at Amigo's Inn on the night of March 17, 2001.  Gonzalez stated that March 17, 2001, was the first and only day Sanchez worked at Amigo's Inn.  Gonzalez  never met Sanchez. Sanchez worked at Amigo's Inn for only a couple of hours.  A security company, Aguila Security Consultants, provide personnel to check identification at the door of the tavern.  Gonzalez contacted an individual named "Raoul," later identified as Raoul Aguila, who supplied and sent security guards to the premises "as needed."  Gonzalez paid Aguila Security for services.  Gonzalez neither hired nor compensated Sanchez directly.  

On cross-examination, Gonzalez testified that he had been using Aguila Security for about one year and that Aguila supplied guards two days per week, Fridays and Saturdays.  Gonzalez did not know whether Aguila Security is a licensed facilitator of security guards.  The security guards are given their assignments by Aguila Security.  Once on the assigned premises, guards checked identification, searched people and kept an eye on the premises.  When the guards report for duty, they take direction from the tavern manager.

Lisa Gilbert, a forensic chemist, testified that the substances recovered from Sanchez tested positive for cannabis and cocaine.

Lucarecra Membreno testified through an interpreter that she has been working for Amigo's Inn for approximately three years.  Membreno bartends and pays invoices, including those for the security company.  Membreno stated that the night of March 17, 2001, was the first night Sanchez worked as security at Amigo's Inn and she had never seen him prior to that night.  Sanchez' duties were to stand at the entrance door and check identification.  Sanchez never went behind the bar or served alcohol.

Membreno stated that Amigo's Inn has a contract with Aguila Security and that Aguila provided Sanchez as a guard on the night in question.  Aguila Security is owned by "Raoul" and payments are made to Aguila Security, not to the individual guard. Membreno stated that Amigo's Inn had no choice as to who would be sent over as a guard.  Upon his arrival, Sanchez was not given any training or instructions by any representative of Amigo's Inn.  Amigo's Inn does not provide a uniform to the guards supplied by Aguila.

Membreno described Sanchez' arrest as follows:  "He was at the door, and they came in and started to search.  They put his hands up and then he was searched.  He was searched and searched.  And the last thing I saw was when he was handcuffed and taken out."  Membreno did not see any small bags drop to the floor.

Rebecca Flores is an employee at Amigo's Inn who works from 9 a.m. to 5 p.m., six days a week.  Flores worked at Amigo's Inn on March 17, 2001.  Flores also pays invoices for Amigo's Inn and is familiar with the relationship between Amigo's Inn and Aguila Security.  On the evening of March 17, 2001, Sanchez was responsible for checking identification at the door.  Sanchez did not go behind the bar and did not handle money.  Sanchez did not work at Amigo's Inn on any prior occasion.  Flores stated that there is a different security guard on duty every night and that the security company is responsible for training each guard.

Plaintiff's attorney requested a continuance, explaining that he was unable to reach Aguila to testify at the hearing and was attempting to locate his address in order to serve a subpoena.  Aguila had refused to testify or to provide his address.  Plaintiff's attorney further explained that Aguila went directly to Amigo's Inn to retrieve checks for security services and that plaintiff did not have Aguila's address.  Aguila did not appear at the hearing to testify.  

On June 14, 2002, the LLCC published its findings and order (the revocation order) determining that charges 1, 2 and 3 (possession, through an agent, of a controlled substance on the licensed premises) had been sustained and determining that charges 4 and 5 (possession with intent to deliver) had not been sustained.  The revocation order revoked Amigo's Inn liquor license and all other city licenses held by Amigo's Inn.

Plaintiff filed an appeal with the Licence Appeal Commission (Commission).  The Commission affirmed the revocation order and denied plaintiff's motion for reconsideration.

Plaintiff subsequently filed a complaint for administrative review in the circuit court of Cook County seeking reversal of the revocation order as affirmed by the Commission. Each party filed memoranda in support and opposition to the complaint.  On April 4, 2003, the trial court entered a memorandum opinion and order affirming the revocation order.  In its opinion, the trial court concluded that the evidence supported the Commission's findings that Amigo's Inn controlled the manner in which the security guards performed their work.  Because the trial court could not say that the relationship between Sanchez and Amigo's was "so clear as to be indisputable," it concluded that the nature of the relationship was a question of fact to be decided by the administrative agency.  The trial court found that the record contained sufficient evidence to support the Commission's determination that Amigo's had the right to control the manner in which the work of Sanchez was to be performed.  The trial court further noted that Amigo's Inn incurred three prior sanctions from the LLCC and that evidence of previous misconduct could be properly considered.  

Plaintiff filed a motion for reconsideration and a supporting memorandum, and the Commission filed a response.  On June 18, 2003, the trial court entered its order denying plaintiff's motion for reconsideration.   This timely appeal followed.

OPINION

Initially, plaintiff contends that the finding of the Commission that Sanchez was an agent of Amigo's Inn was against the manifest weight of the evidence and an error of law.

Upon review of a final decision under the Administrative Review Law (735 ILCS 5/3-101, 
et seq. 
(West 2002)), we hold an agency's findings of fact to be 
prima facie 
true and correct unless against the manifest weight of the evidence.  
Launius v. Board of Fire & Police Commis­sioners of the City of Des Plaines
, 151 Ill. 2d 419 (1992).  We review an agency's conclusions of law and construction of a statute 
de novo
.  
Envirite Corp. v. Illinois Environmental Protection Agency
, 158 Ill. 2d 210 (1994).    

Plaintiff argues that Amigo's Inn has no liability or responsibility for the acts of Sanchez because Sanchez was an independent contractor employed as a security guard by Aguila, not by Amigo's Inn.  In support, plaintiff cites to section 10-3 of the Liquor Control Act (the Act) which provides in pertinent part as follows:

"§ 10-3.  Every act or omission of whatsoever nature constituting a violation of any of the provisions of this Act,
 by any officer, director, manager or other agent or employee 
of any licensee, shall be deemed and held to be the act of such employer or licensee, and said employer or licensee shall be punishable in the same manner as if said act or omission had been done or omitted by him personally." (Emphasis added.)  235 ILCS 5/10-3 (West 2002).

Plaintiff argues that the statute is unambiguous as to imposing strict liability on a licensee for the acts of an officer, director, manager or "other agent or employee," and that Sanchez falls into none of these categories because he was an independent contractor.   

In addressing plaintiff's contention, we are presented with a mixed question of law and fact involving an examination of the legal effect of a given set of facts.  
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 391 (2001).  We must consider the trial court's interpretation of the Act while at the same time considering whether Sanchez qualifies as an "agent" under the Act. 

Whether the courts have correctly interpreted the provisions of a statute is a question of law that we review 
de novo
.  
People v. Davis
, 199 Ill. 2d 130, 135 (2002).  In construing a statute, we ascertain and give effect to the intent of the legislature.  
People v Latona
, 184 Ill. 2d 260, 269 (1998).  Courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it.  
Gill v. Miller
, 94 Ill. 2d 52, 56 (1983).  The most reliable indicator of legislative intent is the language of the statute which, if plain and unambiguous, must be read without exception, limitation, or other condition.  
People v. Lavallier
, 187 Ill. 2d 464, 468 (1999).  

The Act imposes liability on licensees through their agents.  An agency is a fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf.  
Letsos v. Century 21-New West Realty
, 285 Ill. App. 3d 1056, 1064, 675 N.E.2d 217 (1996).  An agent's authority may be either actual or apparent, and actual authority may be either express or implied.  
C.A.M. Affiliates, Inc., v. First American Title Insurance Co.
, 306 Ill. App. 3d 1015, 1021, 715 N.E.2d 778 (1999).  Only the alleged principal's words and conduct, not those of the alleged agent, establish the agent's authority.  
First American Title Insurance Co. v. TCF Bank, F.A.
, 286 Ill. App. 3d 268, 676 N.E.2d 1003 (1997).

Generally, the question of whether an agency relationship exists and the scope of the purported agent's authority are questions of fact.  
Progress Printing Corp. v. Jane Byrne Political Committee
, 235 Ill. App. 3d 292, 601 N.E.2d 1055 (1992).  A principal-agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to personal liability.  
Lang v. Silva,
 306 Ill. App. 3d 960, 972, 715 N.E.2d 708 (1999).   Although the right to control is the hallmark of agency (
Kaporovsky v. Grecian Delight Foods, Inc.
, 338 Ill. App. 3d 206, 210-11, 787 N.E.2d 268 (2003)), the law imposes strict liability upon the licensee for the action or conduct of his agents or employees on the premises regardless of whether the licensee has exercised control over the conduct of his employees or agents.  
Byrne v. Stern
, 103 Ill. App. 3d 601, 606, 431 N.E.2d 1073 (1981).

The following factors are to be considered in distinguishing an agent from an independent contractor:  (1) the right to control the manner in which the work is performed; (2) the method of payment and whether taxes are deducted from the payment;  (3) the level of skill required to perform the work; and (4) the furnishing of the necessary tools, materials or equipment.  
Lang v. Silva
, 306 Ill. App. 3d at 972.  

Relying on 
Lang
, the trial court here concurred that "no rigid rule exists to determine whether one is an agent or employee of an independent contractor."  
Lang
, 306 Ill. App. 3d 960.  The trial court explained that while ordinarily the determination of agency is a question of fact, if the relationship is so clear so as to be indisputable the question may be decided as a matter of law.  The trial court stated that it could not say that the relationship between Sanchez and Amigo's was so clear as to be indisputable, but nevertheless concluded that the nature of the relationship was a question of fact to be decided by the administrative agency.  The trial court stated that the record contained "sufficient evidence" to support the Commission's determination that Amigo's had the right to control the manner in which the work of Sanchez was to be performed. The trial court further noted that Amigo's Inn incurred three prior sanctions from the LLCC and that evidence of previous misconduct could be properly considered.  

Plaintiff contends that the LLCC failed to establish that Sanchez was an agent as opposed to an independent contractor. Plaintiff argues that  in relying on 
Lang
, the trial court ignored certain portions of 
Lang
, failed to address subsequent cases, and relied on facts 
de hors
 the record, 
i.e.
, prior sanctions by the LLCC.  
 In support, plaintiff cites 
Nappi v. License Appeal Comm'n
, 50 Ill. App. 3d 329 (1977).  There, a barmaid shot and killed her husband during a domestic dispute on the licensed premises.  This court held that the act of the barmaid could not be charged to the licensee because the conduct had nothing to do with her employment and could not be seen as furthering the purpose of the licensee.  
Nappi
, 50 Ill. App. 3d at 331.

The Commission 
responds that while the 
Nappi
 court observed that whether an employer is liable for an agent's conduct depends on whether the conduct is "in furtherance of his master's business," the Liquor Control Act makes no such distinction.  The Commission argues that the Act has no requirement that acts in violation are limited to those that are in furtherance of the sale of liquor.  

The Commission cites the case of 
Brother Timothy's, Inc. v. Illinois License Appeal Comm'n
, 69 Ill. App. 3d 490 (1979).  There, a bartender closed the tavern, continued to serve drinks to a patron, and then killed the patron on the premises.  The Commission revoked the license of the tavern.  This court rejected the licensee-appellant's reliance on 
Nappi
, finding that the victim was a customer who had been served while the bar was open for business and continued to remain a patron after the tavern closed.  The Commission argues that the present case is similar to 
Brother Timothy's
, as Sanchez committed an illegal act on the premises and during the business hours of Amigo's Inn.

We are not persuaded by the Commission's analysis.  The Commission  fails to address the evidence revealed at the hearing, 
i.e.
, that Sanchez was not an employee of Amigo's Inn and that Sanchez received his instructions and salary directly from Aguila.  The record further reveals that the Commission failed to establish that Sanchez possessed narcotics with the intent to sell them on the licensed premises, and that plaintiff was found not guilty of the two charges relating to intent to sell.  In this important respect, neither 
Nappi
 (employee barmaid) nor 
Brother Timothy's
 (employee bartender) is instructive in the present case.     

 We similarly part ways with the trial court regarding its analysis and conclusion.  The direct evidence heard by the Commission revealed that while Gonzalez requested security at Amigo's Inn for Friday and Saturday nights, Aguila assigned the guards, trained and equipped the guards, and paid the guards.  The record shows that the entire incident occurred inside of 10 seconds and that the facts surrounding exactly what was observed were sketchy at best.  The Amigo's Inn employee witnesses present at the time of the incident testified that they had never seen Sanchez prior to March 17, 2001, that he was not permitted behind the bar, that they had no knowledge that he possessed narcotics, and that they paid Aguila directly for the services of the security guards. Neither of the witnesses, one of whom testified through an interpreter, saw any packets drop to the ground.  None of the officers testified that they saw anything except packets dropping to the ground.  Based on the record, it is not clear that Sanchez was an agent of Amigo's Inn under section 3 of the Act. 

We conclude that the decision of LLCC and the order of the Commission is against the manifest weight of the evidence.

Plaintiff also appeals the sanction of revocation of the license as an overly harsh penalty and an abuse of discretion.  The record shows that Amigo's Inn has no prior record involving narcotics, no narcotics were offered for sale or sold on the premises, and there was no duty on the part of plaintiff to search Sanchez prior to allowing him on the Amigo's Inn premises.

In support, plaintiff cites 
Jacquelyn's Lounge, Inc. v. License Appeal Comm'n
, 277 Ill. App. 3d 959, 661 N.E.2d 419 (1996).  There, the Commission decided to revoke all of the plaintiff's city licenses as a penalty for finding that an employee had sold cocaine on the premises on more than one occasion.  This court found the penalty "unduly harsh," finding that the record revealed "mitigating circumstances" that the liquor license had been held for more that eight years without any prior license violations, there was no evidence that the owner of the lounge had prior personal knowledge or involvement in the cocaine sales and there was no evidence of any history of significant drug activity on the premises. The court deemed the period of time between the closing of the lounge and the resolution of the case to be sufficient punishment and reversed the license revocation.  
Jacquelyn's Lounge
, 277 Ill. App. 3d at 966-67. 

Even in cases where agency is determined, this court has held revocation to be an excessive sanction.  See, 
e.g.
 
Byrne
, 103 Ill. App. 3d at 607 (where employee engaged in prostitution without knowledge of licensee, case remanded for imposition of sanction less than revocation); 
Hanson v. Illinois Liquor Control Comm'n
, 201 Ill. App. 3d 974, 559 N.E.2d 1092 (1990) (where licensee was unaware that nephew/employee sold drugs on premises, case remanded for imposition of reasonable sanction less than revocation).  

Because we hold that the determination of the Commission is against the manifest weight of the evidence, it follows that the penalty of revocation is excessive and improper.  We further find that entry into evidence of three prior separate violations of the Act by Amigo's Inn was inappropriate for consideration as to the present charges.  While prior violations of the Act may be relevant in considering the imposition of sanctions, evidence of prior unrelated violations had no place during consideration of the specific matter before the LLCC concerning Sanchez' possible agency of Amigo's Inn.

 For all of the reasons stated herein, we therefore reverse the order of the trial court and vacate the order revoking plaintiff's license.

Reversed.

O'BRIEN and NEVILLE, JJ., concur.