**SCHWEITZER AIRCRAFT CORP., Plaintiff,**

v.

**LANDSTAR RANGER, INC., Defendant.**

**No. 98–CV–6123L.**

United States District Court, W.D. New York.

Sept. 27, 2000.

---

George Carl Pezold, Augello, Pezold & Hirschmann, P.C., Huntington, NY, Gerard F. Smith, Denville, NJ, for Schweitzer Aircraft Corp., plaintiff.

John C. Murrett, Law Offices of Michael R. Vaccaro, Buffalo, NY, for Landstar Rander, Inc., defendant.

## DECISION AND ORDER

FELDMAN, United States Magistrate Judge.

### Preliminary Statement

Currently before the Court is a motion by defendant Landstar Ranger, Inc. ("Landstar") for summary judgment. (Docket # 14). Following oral argument of defendant's motion, the parties indicated that they were pursuing settlement negotiations and asked the Court to postpone decision on the summary judgment motion. Thereafter, the parties advised the Court that settlement talks had broken off and requested the Court to decide the motion. Both parties submitted supplemental papers following argument in support of their respective position. (Docket 27, 28).

In accordance with the provisions of 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of this Court for all dispositive matters, including trial. (Docket # 6). For the following reasons, defendant's motion is **granted.**

### Relevant Facts

Plaintiff Schweitzer Aircraft Corporation ("Schweitzer") commenced the present action seeking damages in the amount of $914,389. (*See* Complaint, ¶ 8, Docket # 1). Schweitzer alleges that it contracted with Landstar to transport a Schweitzer helicopter from Elmira, New York to Alamogordo, New Mexico. (*Id.* at ¶ 4). Plaintiff maintains that while en route to Alamogordo, defendant's truck was involved in an accident, resulting in extensive damage to the helicopter and rendering it unusable and worthless. (*Id.* at ¶ 5).

At the time the helicopter was originally received by Landstar, a bill of lading was issued. (*See* Exhibit B, annexed to Affidavit of James F. Wilson, Docket # 16). The bill of lading was on a pre-printed form selected by Schweitzer and filled out and signed by Les Phese, the Traffic Supervisor for Schweitzer. The bill of lading states that Landstar received the cargo "subject to the classifications and lawfully filed tariffs in effect on the date of issue of this Bill of Lading." In addition, the bill of lading contains a provision stating in relevant part: "It is mutually agreed . . . that every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth . . . in the applicable motor carrier classification or tariff if this is a motor carrier shipment. Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, set forth in the classification or tariff which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns." The bill of lading also contains a provision for the declaration of value by the shipper and states: "Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding _____."

The dollar amount on the form was left blank. For purposes of this motion, Landstar agrees that Schweitzer did not request, nor receive, a copy of Landstar's rates, classifications and tariffs prior to the shipment. Further, for purposes of this motion, Landstar concedes that Schweitzer was not advised by any Landstar employee that Landstar's liability would be limited unless a value was declared on the bill of lading.

Despite Schweizer's lack of actual knowledge of the liability limitations in defendant's tariff and it's contention that Landstar is liable for the full value of the helicopter, defendant argues that it has effectively limited its liability for damage to the helicopter to $2.50 per pound or a total of three thousand dollars ($3,000.00) by incorporating by reference its rates, classifications and tariffs into the bill of lading. Landstar asserts that it has fully complied with the relevant limitation of liability provisions of the Carmack Amendment (49 U.S.C. § 14706) and, hence, is entitled to summary judgment awarding damages to Schweizer in the amount of $3,000.00.

### Discussion

*Summary Judgment Standard:* Federal Rule of Civil Procedure 56(c) provides that summary judgment is warranted where there is no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the ambiguities and inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Rule 56(e), however, states unequivocally that in order to defeat a motion for summary judgment, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d Cir.1982) (per curiam).

■ *Merits of Summary Judgement Motion:* The Carmack Amendment to the Interstate Commerce Act imposes liability on a carrier for "actual loss or injury to the property" unless the carrier takes affirmative steps to limit its liability. 49 U.S.C. §§ 13710, 14706. To limit its liability, the carrier must: (1) maintain an approved tariff; (2) obtain an agreement with the shipper based on a choice of liability; (3) give the shipper an opportunity to choose between levels of liability; and (4) issue a bill of lading prior to shipment. *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407 (7th Cir.1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988). The carrier bears the burden of proving that it has limited its liability.

The parties agree that the bill of lading used by Landstar and Schweizer is the transportation contract which controls all obligations arising out of the transportation of the helicopter, including liability for damages incurred during the shipping process. Here, the bill of lading by its terms incorporated into the contract the carrier's "lawfully filed tariffs in effect on the date of the shipping." In opposing summary judgment, Schweizer argues that there were no "lawfully filed tariffs" for Landstar to rely upon in limiting its liability.

■ Schweizer is partially right. Prior to 1995, interstate carriers such as Landstar were required to file with the now defunct Interstate Commerce Commission ("ICC") a tariff setting forth its prices and conditions of carriage. *See* 49 U.S.C. § 10762 (1994) (repealed 1995). In 1995, however, Congress enacted the ICC Termination Act which, *inter alia,* abolished the tariff filing requirement. *See Munitions Carriers Conference Inc. v. United States,* 147 F.3d 1027, 1029–29 (D.C.Cir. 1998). Nevertheless, the fact that tariffs are no longer required to be filed is not

fatal to Landstar's summary judgment motion.

> Simply because Landstar was not required to file a tariff does not mean that it was forbidden to use its old tariff to establish the terms and conditions of shipment. Indeed, the Interstate Commerce Act contemplates that carriers will continue to use a blanket set of rules and conditions. 49 U.S.C. § 13710(a)(1) provides that a carrier "shall provide to the shipper, on request of the shipper, a written ... copy of the rate, classification, rules, and practices, upon which any rate ... is based." The Termination Act's elimination of the filing requirement does not preclude Landstar from relying on its tariff to limit its liability.

*Tempel Steel Corp. v. Landstar Inway, Inc.,* 1999 WL 519412 at *3 (N.D.Ill. July 9, 1999), *aff'd,* 211 F.3d 1029 (7th Cir. 2000).[1] *See also Nieman Marcus Group, Inc. v. Quast Transfer, Inc.,* 1999 WL 436589 at *3 (N.D.Ill. June 21, 1999) ("keeping a tariff on file with the ICC can no longer be a requirement for applying a liability limitation. It will suffice to maintain a tariff under the current statutory regime and to make a copy available if requested."); *Jackson v. Brook Ledge, Inc.,* 991 F.Supp. 640, 645 (E.D.Ky.1997) (so long as the carrier maintained a tariff which contained the terms and conditions under which the shipment would occur and provided same to shipper upon request, the first prong of the *Hughes* test is satisfied).

▮ The long and the short of the elimination of the tariff filing requirement is that Landstar was required, on request, to provide Schweizer with a copy of the "rate, classification, rules, and practices" upon which their shipping rate was based. There is no evidence in the record to suggest that Schweizer ever requested the rate or tariff information and there was no

affirmative obligation on Landstar to produce it prior to shipment. Had Schweizer requested the rate information, it would have been aware that the existing tariffs did contain limitation of liability rates and rules applicable to the transport of the helicopter. (*See* Rates Tariff RNGR 247–C, Exhibit E, Docket # 16, and Rules Tariff RNGR 100–B (containing Rule 848) Exhibit C, Docket # 16.)

Of course, the fact that Landstar had a tariff that set forth the terms and conditions of shipment does not, in and of itself, result in a limitation of its liability for damages to transported goods. In addition, there must be a "written agreement between the carrier and the shipper," in which the limits of liability are agreed to. 49 U.S.C. § 14706(c)(1)(A). Obviously, the shipper is not required to accept a carrier's proposed limitation of liability. Instead, the shipper may insist that the risk of loss remain totally on the carrier and, by doing so, will undoubtedly be charged a correspondingly higher shipping rate.

Schweizer claims that Landstar's purported limitation of liability was unenforceable because it failed to give Schweizer a fair "opportunity to choose between different levels of liability." *Hughes v. United Van Lines, Inc.,* 829 F.2d at 1419–1420. Schweizer understandably relies on courts that have held that a carrier must prove that it affirmatively disclosed to the shipper that the bill of lading has, or incorporates, a limitation of liability provision and offer the shipper a choice of other options. *See, e.g., Toledo Ticket Co. v. Roadway Express, Inc.* 133 F.3d 439, 442–443 (6th Cir.1998).

But the Second Circuit has not endorsed interpreting the "fair opportunity" as narrowly as Schweizer seeks. Indeed, in a case strikingly similar to the instant dispute, the Second Circuit upheld the carri-

---

1. In affirming the district court, the Seventh Circuit also commented on the abolishment of the tariff filing requirement. "Today carriers adopt standard contractual terms, which some call 'tariffs' out of habit, but which have

no effect apart from their status as contracts.... But it is clear what the bill of lading was getting at, so we read its language as incorporating off-the-rack terms." *Tempel Steel Corporation,* 211 F.3d at 1030.

er's limitation of liability. In *Mechanical Technology Inc. v. Ryder Truck Lines,* 776 F.2d 1085 (2d Cir.1985), the carrier (Ryder) was hired by the shipper (MTI) to transport computer equipment valued at $171,360. A filed tariff provided that if the shipper fails to state a "release rate,"[2] then the shipment is deemed released at a rate of $5.00 per pound. As here, the shipper used its own form bill of lading. As here, the shipper's form allowed the shipper to declare a value of the property and thus, opt out of the limited liability tariff. As here, the shipper released the goods to the carrier pursuant to the bill of lading but left blank the space for declared value.

Under these facts, the Second Circuit held that Ryder had successfully limited its liability to a release rate of $5.00 per pound, or a total of $22,175, rather than the $171,360 that plaintiff alleged it was entitled to. The Second Circuit held that the bill of lading, when read with the filed tariff, was sufficient to limit Ryder's liability. Specifically, the Court held that by leaving the spaces blank, the shipper had effectively selected the lowest freight rate and its correspondingly low level of liability, and that "[h]aving had the opportunity on its own form to secure greater protection, [the shipper] cannot complain about the consequences of leaving the applicable spaces blank." 776 F.2d at 1087.

In rejecting plaintiff's assertions that it had no actual knowledge of the various rates, the Court observed that the shipping contract was negotiated between people of at least equal economic stature and commercial awareness or acuity. *Id.* at 1088. The Court noted that "[plaintiff's] own form incorporated the applicable tariff and provided for designation of a released rate." *Id.* Ultimately, the Court concluded that "[w]hen a sophisticated shipper, using his own bill of lading form, leaves blank the space provided for declaring the released value of the goods, we will presume

that he did so deliberately with full knowledge of the consequences under the applicable tariff." *Id.* at 1089. *See Hollingsworth & Vose Co. v. A–P–A Transp. Corp.,* 158 F.3d 617, 620–621 (1st Cir.1998) (by leaving the declared value space on the bill of lading blank, shipper was given a "fair opportunity" to opt out for more coverage in exchange for a higher rate); *Lars T. Ltd., v. New Penn Motor Express,* 2000 WL 1183245 at *5 (D.Me. August 15, 2000) (fact that the shipper left blank the space on the carrier's bill of lading for a declaration of the shipment's value constituted agreement to the limited value). *See also Nieman Marcus Group Inc. v. Quast Transfer, Inc.,* 1999 WL 436589 at *4 (applying *Mechanical Technology* to post-ICC Termination Act shipping contract).

■  This is not a case of an unsophisticated shipper. Schweizer was not shipping lug nuts. It was entrusting Landstar with a helicopter worth approximately $900,000. Indeed, when pressed at oral argument as to whether Schweizer really expected Landstar to not only transport the helicopter from New York to New Mexico but also fully bear the risk of loss for a few thousand dollars in shipping fees, Schweizer admitted that it had also procured a half million dollar private insurance policy to protect against damage to the helicopter. The fact that the Landstar driver damaged the helicopter by trying to squeeze it under a highway bridge with insufficient clearance is indeed unfortunate. But Schweizer assumed this risk of loss by rejecting the fair opportunity afforded to it to declare its own release rate in exchange for a higher shipping rate.

### Conclusion

For the foregoing reasons, Landstar's motion for summary judgment is granted and judgment in the amount of $3,000 is granted against Landstar and in favor of

---

2. A "release rate" is shipping jargon for establishing a level of liability dependent on the weight of the shipment. A higher release rate

thus establishes a higher level of carrier liability for damage incurred in transit.

Schweizer. The Clerk of the Court is directed to enter judgment accordingly.

**SO ORDERED.**