**EFS NATIONAL BANK, Plaintiff,**

v.

**AVERITT EXPRESS, INC., Defendant/Counterplaintiff, Third-party Plaintiff**

v.

**Motor Cargo, Third-party Defendant.**

**No. 00–CV–3201–V.**

United States District Court, W.D. Tennessee, Western Division.

Aug. 31, 2001.

Averitt Express, Inc, Motor Cargo, defendants.

James Allen, Memphis, TN, pro se.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

VESCOVO, United States Magistrate Judge.

The plaintiff, EFS National Bank ("EFS"), filed this lawsuit seeking damages under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, for lost cargo which was transported in interstate commerce by the defendant motor carrier, Averitt Express, Inc ("Averitt"). Before the court[1] is the motion of the plaintiff EFS for summary judgment pursuant to Federal Rule of Civil Procedure 56. EFS claims that the undisputed material facts show that it has established each element of its claim for damages for the full value of the lost cargo under the Carmack Amendment.

The defendant Averitt filed a cross-motion for summary judgment claiming that it is entitled to summary judgment because it transferred the cargo to Motor Cargo, the third-party defendant, who is liable for the plaintiff's loss,[2] and also because it properly limited its liability to an amount less than the full amount of the loss. Third-party defendant, Motor Cargo, filed a partial motion for summary judgment seeking to limit its potential liability to an amount less than the sum claimed by EFS. For the reasons that follow, EFS's motion is denied, and both Averitt's and Motor Cargo's motions are granted.

J. Richard Buchignani, Esq., Georgia A. Robinette, Carmalita Carletos, Wyatt Tarrant & Combs, Memphis, TN, for EFS National Bank, plaintiffs.

Kenneth M. Bryant, Joseph Y. McCoin, Miller & Martin LLP, Nashville, TN, for

1. The parties have consented to the trial of this matter before the United States Magistrate Judge.

2. Averitt did not brief its argument that it should not be held liable for the plaintiff's loss because Motor Cargo, the third party defendant, was responsible for losing the plaintiff's goods and is liable for the plaintiff's loss instead of Averitt.

## I. UNDISPUTED FACTS

The following facts are undisputed for purposes of the summary judgment motions filed by both parties. EFS is in the business of processing Visa and Master Card transactions for grocery stores and other merchants. Averitt is a motor carrier with the federally mandated authority to haul freight in interstate commerce. EFS hired Averitt to deliver certain cargo from Memphis, Tennessee, to Safeway grocery stores in Pleasonton, California. On August 9, 1999, EFS tendered for delivery to Averitt three pallets of cargo, which consisted of T330 Point of Sale Terminals, printers, Sentinel Pin Pads, and cables. Two pallets contained the printers, and one pallet contained the Point of Sale Terminals, pin pads, and cables. Averitt then tendered all three pallets to Motor Cargo, another carrier, to transport the goods to their final destination. When the cargo arrived in California, one pallet, the pallet containing the Point of Sale Terminals, pin pads, and cables, was missing.[3] EFS estimated that the lost cargo was worth a total of $57,750, and it filed a loss/damages claim form with Averitt claiming a loss of that amount.[4] EFS also spent approximately $300 to ship replacement goods to Safeway in an expedited fashion. EFS claimed it was entitled to a total of $58,050 for the loss.

Averitt refused to pay the full value of the lost cargo, asserting that its Rules Tariff 100, Item 780–10, which was in effect at the time of the shipment, limited its liability to $25 per pound, for a total liability of $17,900. Item 780–10 of the Rules Tariff 100 provides that:

3. The missing pallet contained 210 boxes of T330 Point of Sale Terminals, 210 boxes of Sentinel Pin Pads, and one box of cables.

4. EFS attached to the loss/damages claim form invoices detailing the amount paid by

1. Articles tendered with an invoice value exceeding $25.00 per pound per package will be considered to be of extraordinary value. Such articles will not be accepted for transportation. Articles inadvertently accepted with an invoice value exceeding $25.00 per pound per package will be considered to have been released by the shipper at $25.00 per pound per package.

2. In the event of loss of and/or damage to any shipment, carrier's liability will not exceed $25.00 per pound per package, subject to a maximum liability of $250,000.00 per shipment.

(Ex. C, Pl.'s Mem. in Supp. of Mot. for Summ. J.)

According to the affidavit of Averitt cargo claims manager Gary Whitaker, Averitt provided EFS with one of its standard bill of lading forms, and EFS itself prepared and completed the blank bill of lading that Averitt provided. (Whitaker Aff. ¶ 5–6, Ex. A, Def.'s Cross-mot. Opp. Br.). EFS has not offered sworn testimony or other extrinsic evidence to rebut Whitaker's testimony in this regard in any documents submitted to the court, and thus, this fact is undisputed.

The bill of lading provides:

RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rate classifications and rules that have been established by the carrier and are available to the shipper, on request. Subject to the terms of the

EFS for the equipment lost in the shipment which included $37,800 for Point of Sale Terminals (210 lost at $180 per terminal), $14,700 for pin pads (210 lost at $70 per pin pad), and $5,250 for connector cables (210 lost at $25 per cable).

B.O.L. contract on the reverse side of this form.

(Ex. D, Pl.'s Mem. in Supp. of Mot. for Summ. J.). EFS never requested a copy of Averitt's tariff, even though the tariff noting the $25.00 per pound limited liability was readily available and would have been provided to the plaintiff at any time according to Whitaker's affidavit.

The following language also appears on the bill of lading:

> NOTE: (1) Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property as follows:
> Linear Feet: _____ Total Cube: _____ Declared Value: $_____ RVNX $___ per _____. This is to certify that the named materials on this document are properly classified, described, packaged and labeled and are in proper condition for transportation according to the applicable regulations in the Department of Transportation.
> NOTE: (2) Liability Limitation for loss or damage on this shipment may be applicable. See 49 U.S.C. § 14706(c)(1)(A) and (B).

(*Id.*) EFS failed to insert a declared value of the goods in the designated blanks on the bill of lading.

Finally, the back of the bill of lading provides:

> The property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown) marked, consigned, and destined as shown on the front of this document, which carrier agrees to carry to destination, if on its route, or otherwise to deliver to another carrier on the route to destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any

of said property, that every [sic] services to be performed hereunder shall be subject to all the terms and conditions of the Uniform Bill of Lading set forth in the National Motor Freight Classification 100–X and successive issues. The shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, including those on the back hereof, and the said terms and conditions are hereby agreed to be the shipper and accepted for himself and his assigns.

(*Id.*)

## II. ANALYSIS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993); *see also Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir.1992) (per curiam). The party moving for summary judgment has the burden of showing that there are no genuine issues of material fact at issue in the case. *LaPointe*, 8 F.3d at 378. This may be accomplished by demonstrating to the court that the nonmoving party lacks evidence to support an essential element of its case. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir.1993).

In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Companies*, 8 F.3d 335, 339–40 (6th Cir.1993). When a summary judgment motion has

been properly made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In this instance, the parties have filed cross-motions for summary judgment. The standard for evaluating the merits of a summary judgment motion, however, does not change based simply on the existence of cross-motions. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citing *Home for Crippled Children v. Prudential Ins. Co.*, 590 F.Supp. 1490, 1495 (W.D.Pa.1984)). Instead, "[t]he court must evaluate each parties' motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir.1987). Further, the court is not "required to grant summary judgment in favor of one party or another simply because cross-motions have been filed ...." *Wayman v. Colonial Penn Life Ins. Co.*, 805 F.Supp. 525, 534 (E.D.Tenn.1992). The court may not treat cross-motions for summary judgment as if a stipulated record existed and the case was submitted for a final determination. *B.F. Goodrich Co. v.*

*United States Filter Corp.*, 245 F.3d 587, 592 (6th Cir.2001) (citing *Taft Broadcasting*, 929 F.2d at 248).

In deciding a motion for summary judgment, "this court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505). The evidence, all facts, and any inferences that permissibly may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

The sole issue in all three summary judgment motions is whether Averitt effectively limited its liability in accordance with the Carmack Amendment. Under the Carmack Amendment, as a general rule, motor carriers are liable for the actual loss of or damage to freight it is carrying. 49 U.S.C. § 14706(a)(1). An exception to the rule is found at 49 U.S.C. § 14706(c)(1)(A). The exception allows carriers to limit their liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and the shipper if that value would be reasonable under the circumstances surrounding transportation." 49 U.S.C. § 14706(c)(1)(A).[5] To

---

5. In relevant part, section 14706(c)(1)(A) reads as follows:

> [A] carrier providing transportation or service ... may ... establish rates for the transportation of property ... under which the liability of the carrier for such property

> is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.

limit its liability to an amount less than the actual value of the lost or damaged goods, the Carmack Amendment requires only that the carrier provide to the shipper upon request "a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to the shipment, or agreed to between the shipper and the carrier is based." *Id.* § 14706(c)(1)(B).[6]

Relying on two Sixth Circuit cases, *Toledo Ticket Co. v. Roadway Express, Inc.*, 133 F.3d 439 (6th Cir.1998) and *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir.1999), EFS argues that Averitt's Tariff 100 does not limit Averitt's liability. To limit liability, EFS insists, a carrier must give the shipper a fair opportunity to choose between two or more levels of liability and must obtain the shipper's written agreement as to his choice of liability, and Averitt provided no such notice, nor did it obtain the shipper's agreement to limit liability. EFS submits that the only notice Averitt provided to EFS of a limitation of liability was contained in the bill of lading, and under the Sixth Circuit's holding in *Toledo Ticket*, this language fails as a matter of law to provide EFS with the required opportunity to choose between two levels of liability. Thus, according to EFS, Averitt may not rely on the language included in the bill of lading or on Rules Tariff 100, Item No. 780–10 to limit its liability.

The Carmack Amendment was initially enacted in 1906 and codified at 49 U.S.C. § 11707. Under the ICC Termination Act of 1995, which was effective January 1, 1996, the Carmack Amendment, was revised, recodified, and replaced by 49 U.S.C. § 14706, *et seq.* The section of the pre–1996 Carmack Amendment which governed a carrier's ability to limit its liability provided in relevant part:

(a) The Interstate Commerce Commission may ... authorize a carrier ... to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper, or by a written agreement ....

(b)(1) Subject to the provisions of paragraph (2) of this subsection, a motor common carrier ... may, subject to the provisions of this chapter ... establish rates for the transportation of property ... under which the liability of the carrier ... for such property is limited to a value established by written declaration of the shipper or by written agreement between the carrier ... and shipper if that value would be reasonable under the circumstances surrounding the transportation.

(2) Before a carrier or freight forwarder may establish a rate for any service under paragraph (1) of this subsection, the Commission may require such carrier or freight forwarder to have in effect and keep in effect, during any period such rate is in effect under such paragraph, a rate for such service which does not limit the liability of the carrier or freight forwarder.

49 U.S.C. § 11730.

In *Toledo Ticket*, the Sixth Circuit rejected a carrier's argument that it gave the shipper a reasonable opportunity to choose between levels of liability when it included

---

**6.** Section 14706(c)(1)(B) provides that

If the motor carrier is not required to file its tariff with the Board, it shall provide ... to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which

any rate applicable to a shipment, or agreed to between the shipper and the carrier is based. The copy provided by the carrier shall clearly state the dates of applicability of the rate, classification, rules, or practices.

language on its bill of lading very similar to that used by Averitt in this case. The court held that the language used on the bill of lading was insufficient to give the shipper a fair opportunity to choose between levels of liability, explaining that a carrier must provide both reasonable notice of any options that would limit liability and the opportunity to obtain information about the options that "will enable the shipper to make a deliberate and well-informed choice." *Toledo Ticket,* 133 F.3d at 442. The Sixth Circuit held in *Toledo Ticket* that section 10730, allowing carriers to limit liability, was "a very narrow exception to the general rule ... requiring that the carrier be liable for the actual value of the shipper's property," *Id.* at 442 (citations omitted), and for a carrier to limit its liability pursuant to section 11730, it had to satisfy four requirements: (1) the carrier had to maintain approved tariff rates with the ICC; (2) it had to give the shipper a fair opportunity to choose between two or more levels of liability; (3) it had to obtain the shipper's written agreement as to his choice of liability; and (4) it had to issue a receipt or bill of lading prior to moving the shipment. *Id.* (citing *Rohner Gehrig Co. v. Tri–State Motor Transit,* 950 F.2d 1079, 1081 (5th Cir.1992); *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1415 (7th Cir. 1987)).

■ Section 14706(c)(1)(A) of the current version of the Carmack Amendment which allows carriers to limit their liability contains language nearly identical to the pre–1996 version. It provides that the carrier may

establish rates for the transportation of property ... under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be rea-

sonable under the circumstances surrounding the transportation.

However, the current version of the Carmack Amendment provides that "[i]f the motor carrier is not required to file a tariff with the Board, it shall provide ... *on the request of the shipper,* a written or electronic copy of the rate classification rules and practice ...." 49 U.S.C. § 14706(c)(1)(B) (emphasis added). The old version did not contain a provision stating that the carrier had to provide a copy of the rate classification rules only on the request of the shipper. The legislative history of the revised Carmack Amendment reveals that the intent of Congress in amending the statute was to "return to the pre-TIRRA situation where shippers were responsible for determining the conditions imposed on the transportation of a shipment ...." H.R. Conf. Rep. No. 104–422, at 223 (1995), *reprinted in* 1996 U.S.C.C.A.N. 850. In more detail, the House of Representatives Conference Report No. 104–422 states in pertinent part:

The intention of this conference agreement is to replicate, as closely as possible, the practical situation which occurred prior to the enactment of the Trucking Industry Regulatory Reform Act of 1994 (TIRRA), which replaced the requirement that tariffs be filed with the ICC for individually determined rates. Prior to the enactment of TIRRA, carriers had the ability to limit liability as a part of the terms contained in the tariff. By signing a bill of lading which incorporated by reference the tariff, the shipper was deemed to have agreed to the tariff and its conditions and terms. However, the carrier was under no obligation to specifically notify the shipper of the conditions and terms of the tariff. It was the responsibility of the shipper to take an affirmative step to determine what was contained in the tariff—usually through the retaining of a tariff watch-

ing service. An unintended and unconsidered consequence of TIRRA was that, when the tariff filing requirement was repealed, carriers lost this particular avenue as a way of limiting liability. This provision is intended to return to the pre-TIRRA situation where shippers were responsible for determining the conditions imposed on the transportation of a shipment.

The two Sixth Circuit cases relied upon by the plaintiff, *Toledo Ticket Co. v. Roadway Express, Inc.*, 133 F.3d 439 (6th Cir.1998) and *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir.1999), were based on events which transpired prior the 1995 amendments to the Carmack Amendment even though the dates of the opinions postdate the amendments. There is no current Sixth Circuit case interpreting the Carmack Amendment post–1995.

Given the recent changes in the law, the four factors used by the Sixth Circuit in earlier cases interpreting the pre–1996 Carmack Amendment may no longer be completely relevant. The requirement that the carrier must maintain approved tariff rates with the ICC cannot possibly apply because the ICC Termination Act of 1995 eliminated the ICC itself. *See Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1271 (11th Cir.2001) (stating that "[t]he ICC Termination Act ... eliminated the ICC ...."); *Schweitzer Aircraft Corp. v. Landstar Ranger, Inc.*, 114 F.Supp.2d 199, 201 (W.D.N.Y.2000) (recognizing that a tariff no longer need be filed under ICC-TA).

■ It is unclear whether the second and third requirements, that the carrier must give the shipper a fair opportunity to choose between two or more levels of liability and that the carrier must obtain the shipper's written agreement as to his choice of liability, should still apply. *See Nieman Marcus Group, Inc. v. Quast Transfer, Inc.*, No. 98C3122, 1999 WL 436589 at *4, (N.D.Ill. June 21, 1999) (recognizing that "[s]ince the statutory scheme no longer contains a provision regarding offering different rates for different levels of liability limitation, it is unclear whether providing a reasonable opportunity to choose between levels of liability should still be a requirement for enforcing a limitation liability"). These two requirements, to some extent, are contrary to the congressional intent behind the new law. The legislative history indicates that Congress intended to make it the shipper's responsibility to ask for a copy of the relevant rate classification rules from the carrier. *See Norpin Mfg. Co. v. CTS Con–Way Transp. Servs.*, 68 F.Supp.2d 19, 24–25 (D.Mass. 1999) (stating that "[i]t appears to be the intent of the ICCTA, as revealed by the legislative history, to continue to hold shippers to constructive knowledge of tariffs under certain circumstances" and that "as the legislative history also makes clear, a shipper has the affirmative duty to request the applicable tariff ...").

The Carmack Amendment as amended allows a carrier to limit its liability "to a value established by ... written agreement between the carrier and shipper ...." 49 U.S.C. § 14706(c)(1)(A). The Eleventh Circuit recently found that the bill of lading, which the shipper prepared and both parties signed, was a sufficient "written agreement" under the statute to allow a carrier to enforce its tariff since the bill of lading made reference to the tariff's liability-limiting provision. *Siren, Inc. v. Estes Express Lines*, 249 F.3d, 1268, 1271–73 (11th Cir.2001). The Eleventh Circuit specifically found that when the shipper was the one to fill out the bill of lading, it was not necessary to "protect shippers from themselves." *Siren*, 249 F.3d at 1271. According to the affidavit of Gary Whitaker, cargo claims manager with

Averitt, EFS completed the bill of lading form and submitted it to Averitt. (Whitaker Aff. ¶ 5–6, Ex. A, Def.'s Cross-mot. Opp. Br.) Considering each motion for summary judgment independently, EFS has the burden to demonstrate that this particular fact is material and in dispute. EFS has not rebutted Whitaker's affidavit and has failed to offer additional proof on this matter.

■ On the bill of lading, EFS failed to complete the section listing the declared value of the goods. The bill of lading noted in two areas that the carrier's liability might be limited. Averitt's Rules Tariff 100 was in effect on the date of the incident giving rise to this litigation. The tariff clearly limits Averitt's liability to no more than $25.00 per pound per package. EFS failed to request a copy of the tariff. The bill of lading is a sufficient written agreement by both parties allowing Averitt to limit its liability to the terms stated in Tariff 100. Accordingly, the court finds that Averitt's liability is limited to $17,900, as determined by the tariff. Applying the appropriate summary judgment standard and taking Whitaker's affidavit as undisputed, there is no genuine issue as to any material fact, and, therefore, Averitt is entitled to a judgment as a matter of law that its damages are limited to $17,900.

Averitt's argument that it is not liable at all for the plaintiff's loss because third party defendant, Motor Cargo, was responsible for the loss of the cargo after Averitt tendered the goods to Motor Cargo fails as a matter of law. Section 14706(a)(1) provides that the carrier who issues the bill of lading and any other carrier who actually delivers the cargo are both liable to the recipient of the bill of lading:

> A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service ... are liable to the person entitled to recover under the receipt or bill of lading.

49 U.S.C. § 14706(a)(1). Accordingly, the court finds that Averitt and Motor Cargo are jointly and severally liable to the plaintiff for the loss of cargo in the amount of $17,900.

### III. CONCLUSION

For the foregoing reasons, EFS's motion for summary judgment is denied. Averitt's motion for summary judgment is granted to the extent it seeks to limit its liability to $17,900 but is denied to the extent it seeks to avoid liability altogether. Motor Cargo's motion for partial summary judgment seeking to limit its liability to $17,900 is granted.

IT IS SO ORDERED.