CONVERTING SYSTEMS, INC., Plaintiff-Appellant, v. HOT-LINE FREIGHT SYSTEM, INC., Defendant-Appellee.

First District (6th Division)   No. 1—02—3880

Opinion filed November 26, 2003.

Peter G. Swan, of Emalfarb, Swan & Bain, of Highland Park, for appellant.

Stuart N. Rappaport, of William C. Lindsay & Associates, L.L.C., of Waukegan, for appellee.

JUSTICE SMITH delivered the opinion of the court:

A machine shipped by plaintiff Converting Systems, Inc. (CSI), was damaged during transport by defendant, carrier Hot-Line Freight System, Inc. (Hot-Line). CSI sued Hot-Line under federal law for repair costs of more than $25,000. The circuit court of Cook County entered judgment for CSI in the amount of $2,500 and, on Hot-Line's motion pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)), dismissed the complaint to the extent that it sought damages greater than that amount. On appeal,

CSI contends the court improperly limited Hot-Line's liability for damages absent actual notice of the liability limitations contained in Hot-Line's tariff. For the reasons that follow, we vacate the judgment.

According to the undisputed facts, in November 2001, machinery supplier CSI entered an agreement with a shipping broker to transport a machine from Addison, Illinois, to Shawano, Wisconsin. The bill of lading for the shipment was prepared by CSI and included minimal information: the departure and destination addresses, the name of the carrier (Hot-Line), the shipping broker's "third-party" billing address, a brief description of the four items shipped (one "rebuilt in-line bag machine," a crate, a box, and "wood for skid") and the weight of the shipment (5,000 pounds). The bill included the typewritten name of a CSI employee, Todd Ayer, indicating the bill was "Checked by" him, but it was signed only by a Hot-Line employee. The bill also had Hot-Line's shipping label affixed to it.

The shipment was refused by the recipient for being damaged and it was sent back to CSI. CSI rebuilt the machine at a cost of $25,460.

CSI sought reimbursement of the repair costs from Hot-Line and the shipping broker, and ultimately filed a complaint for property damage of $25,460 under the Carmack Amendment to the Interstate Commerce Act (Act) (49 U.S.C.A. § 14706 (West 1996)).

Hot-Line filed a section 2—619(a)(9) motion to dismiss the complaint (see 735 ILCS 5/2—619(a)(9) (West 2002)), to the extent that it sought damages above $2,500. The motion alleged that: under the Carmack Amendment (49 U.S.C.A. § 14706(c)(1)(a) (West 1996)), its liability was limited to the released rate; the released rate (of 50 cents per pound), set forth in Hot-Line's tariff, totaled $2,500; and CSI, as a "sophisticated shipper," was by law charged with knowledge of the applicable tariff and had an affirmative duty to request the tariff rate, but it did not do so. The motion was based on three federal cases, *EFS National Bank v. Averitt Express, Inc.*, 164 F. Supp. 2d 994 (W.D. Tenn. 2001), *Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268 (11th Cir. 2001), and *Neiman Marcus Group, Inc. v. Quast Transfer, Inc.*, No. 98 C 3122 (N.D. Ill. 1999), in which liability limitations in shipper-prepared bills of lading were upheld.

Hot-Line supported its motion with an affidavit of its director of loss and claim damage, Al Chojnacki (Chojnacki affidavit). Chojnacki stated that Hot-Line maintained its shipping rates in its tariff, which was in effect at the relevant time, the tariff was available to CSI upon request, and CSI did not declare a higher value for the items shipped or elect a higher rate to avoid the tariff's liability limits. Chojnacki also stated that trade practice and custom provide that terms of the standard form bill of lading are incorporated into a bill of lading

prepared by a shipper and that any shipment is subject to the carrier's liability limits and tariffs.

After responding to Hot-Line's motion, CSI was later allowed to file a counteraffidavit from its vice-president and treasurer, Todd Ayer (Ayer affidavit). Ayer stated he arranged the shipment at issue through the shipping broker and he prepared the bill of lading, which did not refer to Hot-Line's tariff, but he was not offered a lower freight rate in exchange for reduced liability. Ayer also contradicted Chojnacki's account of industry custom, stating that a carrier's tariff is not, by custom, automatically incorporated into the bill of lading.

The trial court entered judgment for $2,500 in CSI's favor and against Hot-Line, and granted the motion to dismiss "to the extent [the complaint] seeks damages in excess of $2,500." The written order does not give the court's reasoning for its decision, which was apparently based on its interpretation of federal case law.

On appeal, CSI contends the trial court erred by limiting Hot-Line's liability because it (CSI) had no actual notice of the liability limitations contained in Hot-Line's "unpublished tariff." CSI relies primarily upon *Hillenbrand Industries Inc. v. Con-Way Transportation Services Inc.*, No. NA 00—0255—C—BS (S.D. Ind. 2002), for its contention that, absent a written agreement concerning limitation of liability or "actual notice" of such limitation, Hot-Line's purported limitation of liability is not enforceable under the Carmack Amendment.

■ Section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 2002)) provides for dismissal of a complaint upon the trial court's consideration of issues of law or easily proved issues of fact. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 585, 736 N.E.2d 1174 (2000). A motion for section 2—619 dismissal admits the legal sufficiency of the complaint but raises some affirmative matter, appearing on the face of the complaint or established by external submissions, which defeats the plaintiff's claim. *Neppl*, 316 Ill. App. 3d at 584. Dismissal is allowed where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2002). Such affirmative matter has been defined as "a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." *Neppl*, 316 Ill. App. 3d at 585.

■ In ruling on a section 2—619 motion to dismiss, the trial court may consider pleadings and affidavits. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993).

On appeal of a section 2—619 dismissal, a reviewing court considers "whether the existence of a genuine issue of material fact should have precluded the dismissal or *** whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116-17. The standard of review is *de novo. Neppl*, 316 Ill. App. 3d at 583.

The issue raised on this appeal is governed by the statutory scheme set forth in the Carmack Amendment, as interpretation of federal law was the presumed basis for the dismissal of CSI's complaint. See 49 U.S.C.A. § 14706 (West 1996). The parties have not cited, nor has our research revealed, any Illinois cases concerning the precise issue raised here. However, we are provided direction by decisions of the federal courts interpreting the liability provisions of the Carmack Amendment. Hot-Line correctly notes that we are not bound by those decisions (see *Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc.*, 162 Ill. 2d 99, 103, 642 N.E.2d 470 (1994)), but nonetheless urges us to rely upon *EFS National Bank*, 164 F. Supp. 2d 994, *Siren, Inc.*, 249 F.3d 1268, and *Neiman Marcus Group, Inc.*, No. 98 C 3122. Hot-Line also maintains that *Hillenbrand* was wrongly decided and asserts that consideration of this appeal requires us to "decide an issue of federal law where there is some conflict between the district courts in the Seventh Circuit." Contrary to Hot-Line's assertion, however, our disposition of this appeal does not require us to decide such purported conflict.

■ The general rule under the Carmack Amendment makes motor carriers that transport goods liable for the "actual loss or injury to the property caused by [the receiving or delivering carrier]." *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1063 (7th Cir. 2000); see also 49 U.S.C.A. § 14706(a)(1) (West 1996). An exception exists if a carrier establishes discounted rates, under which its liability is "limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C.A. § 14706(c)(1)(A) (West 1996); see also *Hillenbrand Industries Inc.*, No. NA 00—0255—C—BS.

Legislation enacted in 1995 abolished the Interstate Commerce Commission (ICC) and affected the liability provisions of the Carmack Amendment. See Pub.L. No. 104—88, 109 Stat. 803 (1995); *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 841 (11th Cir. 2003) (setting forth recent legislative changes to Carmack Amendment, including ICC Termination Act). Previously, maintaining a tariff on file with the ICC was one requirement for a carrier to limit its liability. See *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987). After the 1995 legislation, that requirement was modified

so that a carrier now must "maintain an appropriate tariff pursuant to 42 U.S.C. § 13710(a)(1)" as one condition for limiting its liability. *Opp*, 231 F.3d at 1063.

Hot-Line asserts that, under the amended Act, it is now sufficient for a carrier to maintain a tariff and make a copy of the tariff available on the shipper's request, in order to limit its liability. See 49 U.S.C.A. § 14706(c)(1)(B) (West 1996); *EFS National Bank*, 164 F. Supp. 2d at 1000-01 (finding intent of the amendments was to place responsibility on shippers to take affirmative steps to determine contents of tariffs).

However, even after the Act was amended, a carrier is still required to satisfy three other conditions, in addition to maintaining a tariff, to limit its liability. *Opp*, 231 F.3d at 1063. To limit its liability, a carrier must also: (1) obtain the shipper's agreement as to its choice of liability; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (3) issue a receipt or bill of lading prior to moving the shipment. *Opp*, 231 F.3d at 1063. *Cf. EFS National Bank*, 164 F. Supp. 2d at 1001 (finding second and third requirements somewhat "contrary to the congressional intent behind the new law" and questioning their continued validity).

Hot-Line does not address these three requirements, arguing only that having a tariff, which it would have supplied to CSI had CSI requested it, was sufficient to limit its liability. Rather, Hot-Line implicitly relies on the fact that CSI prepared the bill of lading as evidence of choice of levels of liability and agreement to reduced liability: "[CSI] prepared this bill of lading and took advantage of a lower rate structure that existed because of the tariff. Had they desired to declare a higher value for their cargo and avoid the tariff, they could have done so *** and enjoyed a higher degree of protection." Yet, Hot-Line concedes that the bill of lading was "silent on its face" as to any liability limitations. Further, Hot-Line asserts that CSI was, in essence, a "sophisticated shipper" that would be charged with knowledge of trade practices under which the tariff would prevail.

The cases that Hot-Line relies upon, *EFS National Bank*, 164 F. Supp. 2d 994, *Siren, Inc.*, 249 F.3d 1268, and *Neiman Marcus Group, Inc.*, No. 98 C 3122, are factually distinguishable in one fundamental aspect. Although the cases involve shipper-drafted bills of lading, as here, the bills in each of those cases contained specific language imposing limitations of liability.

In *EFS National Bank*, 164 F. Supp. 2d 994, the shipper prepared and completed a blank bill of lading provided it by the carrier. There, the bill provided a space, which the shipper did not fill in, for insertion of a declared value; it also contained additional language concerning

applicable liability limitations and express agreement that the transport was subject to a certain uniform classification which limited the carrier's liability. Given those specific provisions, the district court found the bill of lading to be a sufficient written agreement limiting the carrier's liability. *EFS National Bank*, 164 F. Supp. 2d at 1002.

In *Siren, Inc.*, 249 F.3d 1268, the shipper prepared a bill of lading containing scant information. However, the bill twice indicated that the shipment was covered under a particular classification which was understood industry-wide to mean the carrier's liability was limited to a certain rate. The Eleventh Circuit found that even if the shipper did not know of the terms of the carrier's tariff, the carrier could rely on the limitation designated by the classification used in the bill of lading. *Siren, Inc.*, 249 F.3d at 1270.

In *Neiman Marcus Group, Inc.*, No. 98 C 3122, the shipper also prepared the bill of lading, using a preprinted form which provided that the shipment was subject to classifications and tariffs in effect. There, the bill contained a space for the shipper to insert a declared value, which the shipper did not complete; it also expressly certified that the shipper was familiar with, and agreed to, the terms and conditions set forth in the governing classification or tariff. The district court found the shipper was charged with knowledge of the applicable tariff, particularly where the bill of lading was signed by the shipper and expressly incorporated a tariff. The court found the shipper's signing of the bill constituted a written agreement to limit the carrier's liability. *Neiman Marcus Group, Inc.*, No. 98 C 3122.

■ In the case before us, there was no such incorporation in the bill of lading of any shipping classification or reference to Hot-Line's tariff. Also, there was no space on the bill designated for a released rate, but left blank, nor was there language certifying CSI's knowledge of or agreement to any particular terms or conditions. The absence of such reference to Hot-Line's tariff does not support a conclusion that the purported liability limitations applied to the transport of CSI's machine. See, *e.g.*, *Dean Foods Co. v. Consolidated Freightways Mtr.*, 29 F. Supp. 2d 495, 496 (N.D. Ill. 1998) (rejecting argument of released value freight where shipper did not fill in a declared value on bill of lading and no argument made that shipper was explicitly given choice of rates and liability levels). Here, there was nothing on the bill that would indicate CSI was explicitly given a choice of rates and liability levels.

Moreover, nothing would indicate CSI had actual notice of Hot-Line's tariff, as required by the Seventh Circuit for enforcement of a carrier's limitation of liability. *Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir. 2000). In a case involving a through

bill of lading that incorporated the carrier's tariff, which purported to disclaim liability for certain transport, the court found the Carmack Amendment does not require businesses "to scrounge for limitations that have not been flagged by the carrier." *Tempel Steel Corp.*, 211 F.3d at 1031. Rather, the court found a shipper's actual knowledge of liability limitations was required after the enactment of the 1995 legislation, dispelling Hot-Line's assertion that the 1995 amendments allow a carrier to do little more than provide its tariff on the shipper's request. *Tempel Steel Corp.*, 211 F.3d at 1031 ("Before the 1995 amendments, provisions in tariffs usually governed whether shippers had actual, constructive, or no notice \*\*\*. But with that [filed-rate] doctrine defunct for motor transport, it is hard to envisage how a shipper can be said to agree to a limitation of liability of which it lacked actual knowledge").

Further, anything less than explicit language on the bill of lading appears insufficient to provide a shipper with actual notice of a carrier's liability limitations. In *Hillenbrand*, there was at least some evidence—unlike the case before us—that could support the shipper's notice of liability limitations, but the district court denied the carrier's motion for partial summary judgment. There, in place of a bill of lading, the shipper filled out a "shipping order" which referred to the carrier's tariffs on a sticker affixed by the carrier, and the carrier issued a receipt with a designated classification and incorporation of its tariff. In addition, the parties had done business together in the past and had previously entered into a written agreement concerning the carrier's applicable tariffs.

However, even with comparatively substantial evidence of notice to the shipper, the court concluded that, after *Tempel*, the "sophisticated shipper" doctrine was no longer recognized in the Seventh Circuit. *Hillenbrand Industries Inc.*, No. NA 00—0255—C—BS. Therefore, with constructive notice insufficient, the court found the "shipping order" sticker did not establish the shipper's actual notice of the liability limitations. The court also found the carrier's receipt, which was not signed by the shipper and did not include space for declaration of a higher value, did not establish the shipper's knowledge of or agreement to such limitations. *Hillenbrand Industries Inc.*, No. NA 00—0255—C—BS. Here, there is nothing in the contents of the bill of lading that could be construed as CSI's acknowledgment of a limitation of liability.

Beyond the bare fact that CSI prepared the bill of lading, there was no explicit language in the bill or other evidence to support a conclusion that CSI had actual notice of, or agreed to, any limitation of liability contained in Hot-Line's tariff. We cannot conclude,

therefore, that the decisions of the Western District of Tennessee (*EFS National Bank*, 164 F. Supp. 2d 994), the Eleventh Circuit (*Siren, Inc.*, 249 F.3d 1268), or the Northern District of Illinois (*Neiman Marcus Group, Inc.*, No. 98 C 3122), amount to affirmative matter sufficient to negate CSI's claim for damages greater than $2,500. Therefore, we find dismissal of the complaint to that extent was improper.

Further, we reject Hot-Line's assertion that dismissal was proper because, in the absence of express terms in the bill of lading, the missing terms would be supplied by usage of trade and custom, and that would automatically incorporate its tariff. A determination concerning the usage of trade and custom would involve issues of material fact. As CSI correctly notes in its reply brief, the Chojnacki and Ayer affidavits contain conflicting statements as to trade and custom, and thus would preclude the dismissal of this case based on affirmative matter. See *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116-17.

Moreover, this case involves the additional factor of CSI's use of a shipping broker. Factual questions might arise concerning the broker's role and its responsibilities that would be material to the issue of actual notice, making the section 2—619(a)(9) dismissal inappropriate. See, *e.g.*, *Custom Cartage, Inc. v. Motorola, Inc.*, No. 98 C 5182 (N.D. Ill. 1999) (cross-motions for summary judgment denied, based on disputed issues of material fact concerning the plaintiff's status as carrier or broker). Finally, questions of material fact might also arise in determining whether it was necessary for CSI to sign the bill of lading or receive a receipt from Hot-Line.

Accordingly, we vacate the order entering judgment for CSI in the amount of $2,500, and granting the section 2—619(a)(9) dismissal to the extent CSI sought damages greater than that amount, and remand the cause for further proceedings.

Judgment vacated; cause remanded.

O'MARA FROSSARD, P.J., and GALLAGHER, J., concur.